MARILYN G. DOOLEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; NEAL A. DOOLEY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dooley v. Commissioner
Docket Nos. 26282-85, 24052-89
United States Tax Court
T.C. Memo 1992-39; 1992 Tax Ct. Memo LEXIS 45; 63 T.C.M. (CCH) 1858; T.C.M. (RIA) 92039; January 21, 1992, Filed *45 Decisions will be entered under Rule 155. Marilyn G. Dooley, pro se [1] in docket No. 26282-85. Patrick N. Dooley, for petitioner in docket No. 24052-89. Susan S. Canavello and Kathleen O. Lier, for respondent. SHIELDS, Judge. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION In these consolidated cases respondent on April 11, 1985, mailed a notice of deficiency to Marilyn G. Dooley in which respondent determined deficiencies in her income taxes as follows: Year
Deficiency
1979
$ 8,769.68
1980
24,347.63
1981
18,624.91
On June 30, 1989, a notice of deficiency was mailed by respondent to Neal A. Dooley in which respondent determined deficiencies in and additions to his income taxes as follows: Year
Deficiency Additions to tax
Sec. Sec. Sec.
6651(a)(1) [2]
6651(a)(2)
6653(a)
1979
$ 30,376.55
$ 6,723.48
$ 7,470.53
$ 1,526.96
1980
66,424.63
15,226.16
16,917.95
3,420.94
1981
52,724.06
14,329.28
15,921.42
--   Year
Additions to tax
Sec.
Sec.
6653(a)(1)
6653(a)(2)
1979
--   --
1980
--   --
1981
$ 3,234.18
[1]
*46 After numerous concessions, as reflected in the parties' factual stipulations, the issues [3] for decision are: (1) Whether Neal Dooley failed to report gross income for the taxable years 1979, 1980, and 1981 from sources and in amounts as follows: 1979
1980
1981
Commissions
$ 41,297.38
$ 108,053.50
$ 77,230.01
Capital gains
15,985.00
--   4,126.91
Interest
--   --   1,049.94
57,282.38
108,053.50
82,406.86
*47 (2) Whether Marilyn Dooley failed to report her one-half share of community property income received by Neal Dooley for such years. [4]
(3) Whether Marilyn Dooley is entitled to relief as an innocent spouse under section 66(c) from income tax on her share of the community property income received by Neal Dooley. (4) Whether the assessment of any income tax due from Marilyn Dooley for 1979 and 1980 is barred by the statute of limitations. (5) Whether Neal Dooley is liable for additions to tax under section 6651(a)(1) and (2) for willfully failing to file income tax returns and to pay the tax. (6) Whether Neal Dooley is liable for additions *48 to tax for negligence under section 6653(a) for 1979 and 1980, and for 1981 under section 6653(a)(1) and (2). FINDINGS OF FACT Some of the facts have been stipulated and the stipulations and exhibits identified therein are incorporated herein by reference. Each petitioner was a resident of Louisiana on the date his or her petition was filed. Petitioners were married in 1976 when Mrs. Dooley was 27 years old. They both had been married before. She had two small children from her previous marriage, and he had one dependent child from his. He was then employed as a real estate broker, and they had become acquainted because he owned the apartment complex where she had lived for about a year. At the date of their marriage and up through the date of the trial, she was a clerical employee of the Louisiana Department of Revenue. When it came time to file income tax returns for 1976, i.e., the first returns after their marriage, she gave him her tax information, and he later told her that he had taken care of their return or returns for 1976. Still later he admitted that the 1976 returns had not been filed and suggested that she take care of her 1976 return and he would take care *49 of his because his tax return was more difficult than hers. She then filed her 1976 return as a married person filing separately and filed similar returns for each year thereafter through 1981. She did not learn until after respondent's criminal investigation of Neal Dooley started in September of 1982 that he had not filed income tax returns for any of these years. During the investigation she also learned that for some years prior to their marriage he had failed to file returns but had apparently disposed of that problem without a criminal investigation. During the years 1979, 1980, and 1981 petitioners lived together with their children at 1599 Bellfort Drive, Baton Rouge, Louisiana. During these years Neal Dooley was self-employed primarily on a commission basis as a broker of oil and gas leases for Roy Roshto (Roshto) and Flame Petroleum Co., Inc. (Flame), which was owned by Roshto. In payment of his commissions he received checks from both Roshto and Flame but kept no record of the nature and the amount of the checks. During 1979, 1980, and 1981, he received checks totaling $ 43,569.75, $ 111,507, and $ 82,541.60, respectively, which were drawn on the bank accounts of *50 Roy Roshto and Flame Petroleum and made payable to him. In September of 1982, Jo Ann Hernandez, a special agent for respondent, commenced a criminal investigation of Neal Dooley because information had been received by the Internal Revenue Service that he had not filed income tax returns for 1979, 1980, and 1981. During the criminal investigation Neal Dooley repeatedly told Ms. Hernandez that each of the checks set forth in the following schedules represented payment to him of commissions: Schedule for 1979
Date
Check No.
Payor
Amount
3/9
5033
Roy Roshto--Special Acct.
$    100.00
3/22
5050
Roy Roshto--Special Acct.
1,500.00
5/18
5239
Roy Roshto--Special Acct.
5,000.00
5/18
5240
Roy Roshto--Special Acct.
500.00
5/30
5273
Roy Roshto--Special Acct.
575.00
5/31
5275
Roy Roshto--Special Acct.
3,650.00
6/8
5334
Roy Roshto--Special Acct.
2,500.00
6/19
5405
Roy Roshto--Special Acct.
3,000.00
7/3
5439
Roy Roshto--Special Acct.
1,600.00
7/20
5518
Roy Roshto--Special Acct.
500.00
8/6
5578
Roy Roshto--Special Acct.
8,700.00
9/10
5677
Roy Roshto--Special Acct.
144.75
10/12
5864
Roy Roshto--Special Acct.
150.00
10/30
5907
Roy Roshto--Special Acct.
650.00
11/20
1024
Flame Petroleum Co., Inc.
7,000.00
--
1025
Flame Petroleum Co., Inc.
8,000.00
Total
$ 43,569.75
*51 Schedule for 1980
Date
Check No.
Payor
Amount
2/8
1185
Flame Petroleum Co., Inc.
$ 518
4/2
1304
Flame Petroleum Co., Inc.
250
4/16
6415
Roy Roshto--Special Acct.
3,000
4/29
1352
Flame Petroleum Co., Inc.
1,000
5/8
1386
Flame Petroleum Co., Inc.
6,000
6/4
1442
Flame Petroleum Co., Inc.
300
6/12
1471
Flame Petroleum Co., Inc.
200
6/16
112
Flame Petroleum Inc.
9,700
6/18
1481
Flame Petroleum Co., Inc.
9,000
6/18
114
Flame Petroleum Inc.
6,000
6/23
1487
Flame Petroleum Co., Inc.
8,500
6/25
116
Flame Petroleum Inc.
8,900
6/27
1506
Flame Petroleum Co., Inc.
400
7/8
1533
Flame Petroleum Co., Inc.
500
7/15
1544
Flame Petroleum Co., Inc.
6,000
7/22
144
Flame Petroleum Inc.
2,600
7/31
152
Flame Petroleum Inc.
669
8/1
214
Flame Petroleum Inc.
200
8/27
227
Flame Petroleum Inc.
8,000
8/27
6744
Roy Roshto--Special Acct.
2,000
9/10
257
Flame Petroleum Inc.
9,900
9/12
282
Flame Petroleum Inc.
370
10/15
6856
Roy Roshto--Special Acct.
6,000
10/29
1597
Flame Petroleum Co., Inc.
2,500
10/29
1621
Flame Petroleum Co., Inc.
8,000
11/20
1668
Flame Petroleum Co., Inc.
2,000
--
108
Flame Petroleum Inc.
9,000
Total
$ 111,507
*52 Schedule for 1981
Date
Check No.
Payor
Amount 2/10
1934
Flame Petroleum Co., Inc.
$ 7,500.00
3/6
2011
Flame Petroleum Co., Inc.
2,000.00
3/12
7237
Roy Roshto--Special Acct.
7,000.00
6/5
2362
Flame Petroleum Co., Inc.
919.09
6/10
2368
Flame Petroleum Co., Inc.
5,000.00
6/30
2440
Flame Petroleum Co., Inc.
3,000.00
7/7
2464
Flame Petroleum Co., Inc.
9,000.00
7/7
2466
Flame Petroleum Co., Inc.
1,643.56
7/20
2523
Flame Petroleum Co., Inc.
3,611.23
8/5
2570
Flame Petroleum Co., Inc.
5,568.97
8/18
2626
Flame Petroleum Co., Inc.
5,000.00
9/3
2689
Flame Petroleum Co., Inc.
5,000.00
9/14
2725
Flame Petroleum Co., Inc.
5,278.75
9/24
7647
Roy Roshto--Special Acct.
9,500.00
9/24
2789
Flame Petroleum Co., Inc.
5,000.00
10/6
2834
Flame Petroleum Co., Inc.
5,000.00
11/4
2941
Flame Petroleum Co., Inc.
2,520.00
Total
$ 82,541.60
At the conclusion of the criminal investigation Neal Dooley pleaded guilty to having willfully failed to file an income tax return for each of the years 1979, 1980, and 1981 in violation of section 7203. After he pleaded guilty, but before he was sentenced, Neal Dooley told Ms. Hernandez that not *53 all of the checks drawn on the bank accounts of Roshto and Flame and made payable to him in 1979, 1980, and 1981, constituted commission income. After Neal Dooley was sentenced in the criminal case, a civil investigation was commenced by Revenue Agent Nancy Stewart with respect to his income tax liability for 1979, 1980, and 1981. During the course of the civil investigation, Mr. Dooley stated to Ms. Stewart that for 1979, 1980, and 1981, he received from Roshto and Flame commission income of only $ 5,719.75, $ 10,907, and $ 46,541.60, respectively, instead of the $ 43,569.75, $ 111,507, and $ 82,541.60 he had reported earlier to Ms. Hernandez. He claimed that only 5 percent of the balance of the checks received by him from Roshto and Flame were income to him because these checks were part of a check cashing arrangement he had entered into with Roshto. According to Dooley's testimony at the trial of this matter, the check cashing arrangement worked as follows: Roshto, a compulsive gambler, would write checks payable to Dooley on Roshto's personal or corporate accounts. Dooley would cash the checks, retain 5 percent of the proceeds, and give the balance to Roshto. Dooley claimed *54 that Roshto approached him about cashing the checks for the following reasons: (1) Roshto knew that Dooley was not filing income tax returns; (2) Roshto pointed out that whether or not the IRS learned of Dooley's delinquency, Dooley's tax bracket would be lower than the tax bracket of either Roshto or his corporation; and (3) Roshto was willing to pay any income tax Dooley incurred as a result of cashing the checks. To the agent, Dooley claimed that he had previously stated to respondent's agents that all the checks represented commission income and pleaded guilty under section 7203 to having willfully failed to file tax returns, because: (1) His lawyer in the criminal case told him that failing to file a return was only a misdemeanor while an admission by him that he had participated with Roshto in the check cashing arrangement would probably subject him to a felony prosecution; and (2) he sincerely believed that Roshto would pay any tax liability that respondent determined against Dooley. After pleading guilty in his criminal case, Dooley assisted respondent's agents in their ongoing criminal investigation of Roshto and Flame which covered the years 1979 through at least 1982. *55 He even unsuccessfully tried to tape, at the request of the agents, conversations he had with Roshto. Roshto eventually pleaded guilty under section 7206 to having willfully made and subscribed under penalties of perjury a false corporate tax return for Flame for 1982. The check cashing arrangement described by Dooley was generally involved to some extent in Roshto's case but none of the checks involved in Dooley's case were used by respondent in his criminal case against Roshto for 1982. At the time Roshto pleaded guilty in the criminal case against him, he told Ms. Hernandez, respondent's special agent, that approximately 70 percent of the checks drawn on his personal and corporate accounts and made payable to Dooley during 1978, 1979, and 1981, were part of the check cashing arrangement he had with Dooley. Roshto did not testify at the trial of this matter. The record contains no explanation for his absence. Throughout the course of the civil examination by Revenue Agent Stewart, Neal Dooley continued to maintain that not all of the checks he received from Roshto and Flame during the years in issue constituted commission income. Finally, on November 12, 1986, Dooley and *56 respondent arrived at a partial agreement with respect to his taxable income for 1979, 1980, and 1981. The partial agreement was represented by a Form 870 in which he agreed that he had failed to report the following amounts of income: 1979
1980
1981
Wages (Marilyn)
$ 5,796.58
$ 6,939.51
$ 6,617.53
Interest income
.33
9.80
--   Commissions
3,447.37
7,453.50
41,230.01
(Roshto & Flame)
Capital gains
--   --   4,126.91
9,244.28
14,402.81
51,974.45
The amounts agreed to in the Form 870 include Neal Dooley's one-half community property share of the wages earned by Marilyn Dooley for 1979, 1980, and 1981, and his one-half community property share of the amounts which he identified as commission income to the special agent of respondent at the conclusion of the criminal investigation. Also included in the partial settlement represented by the Form 870 are Neal Dooley's one-half community property share of interest income received from banks during the years in issue, and of capital gains received during 1981. The amounts for which Neal Dooley executed the Form 870 are not included in the deficiency notice as adjustments to his income for 1979, 1980, *57 or 1981. At the trial of this case Neal and Marilyn Dooley stipulated that checks totaling $ 5,719.75, $ 9,507, and $ 34,521.60 were received in 1979, 1980, and 1981, respectively, by Neal Dooley from Roshto and Flame as commission income. In 1972, Contractor's Accounting and Supply Company, Inc. (Contractor's Accounting) was a Louisiana corporation, of which Neal Dooley was president and Marilyn Dooley was secretary. On or about June 29, 1972, Neal Dooley caused Contractor's Accounting to pay $ 4,462.50 as part of the purchase price for an 18.91-acre parcel of land in Livingston Parish, Louisiana. On January 23, 1979, Contractor's Accounting sold the 18.91-acre parcel of land to Ronald Harris. Neal Dooley received $ 13,800 of the proceeds from the sale of this property. On September 26, 1979, Neal Dooley purchased for $ 1,000, in the name of Contractor's Accounting, the mineral rights to a 5-acre parcel of land in Livingston Parish, Louisiana. The mineral rights were later assigned in 1979 to Mississippi Oil for $ 7,500. Neal Dooley received $ 3,250 as his share of the proceeds from this assignment. Neal Dooley's initial investment in Contractor's Accounting was $ 1,000. *58 In December of 1979, he transferred Contractor's Accounting to Roshto for $ 23,500. During the taxable year 1981, Neal Dooley received interest income in the amount of $ 1,049.94 on a mortgage note executed by Rodney Sanders. During 1979, 1980, and 1981, Neal and Marilyn Dooley received interest income from banks in the respective amounts of $ 0.67, $ 19.61, and $ 77.24. Marilyn Dooley timely filed tax returns for 1979, 1980, and 1981. On each return she claimed the filing status of, "Married, filing separate return." Her only reported income for 1979, 1980, and 1981, were wages in the amounts of $ 11,593, $ 13,879, and $ 13,235, respectively, which she received from the Louisiana Department of Revenue. She did not disclose on or with her income tax returns for 1979, 1980, and 1981, any information with respect to the income and expenses of Neal Dooley. During the years in issue Marilyn Dooley was aware that Neal Dooley earned commissions from his work in the oil and gas business. She was also aware that he worked for Roshto and Flame, but she did not know the amount of his income. During 1979, 1980, and 1981, Neal Dooley gave Marilyn Dooley approximately $ 2,000 in cash *59 each month which she deposited in their joint checking account and on which she wrote checks to pay their household and other living expenses. They and the children vacationed in Florida once each year. During the course of respondent's criminal investigation of Neal Dooley, Marilyn Dooley cooperated with respondent's agents and provided them with cancelled checks, receipts, and other records. Neal and Marilyn Dooley incurred medical and dental expenses during 1979, 1980, and 1981, in the following amounts: 1979
1980
1981
Insurance premiums
$ 533.18
$ 843.96
$ 973.39
for medical care
Medicine and drugs
179.53
314.98
376.87
Other medical and
620.00
671.25
2,061.07
dental expenses
OPINION 1. Omissions from Gross Income
a. Commissions
Petitioners contend that the deficiency was arbitrarily determined by respondent and therefore is not entitled to a presumption of correctness because after Roy Roshto pleaded guilty under section 7206, respondent was aware that not all of the checks drawn on the bank accounts of Roshto and Flame and made payable to and endorsed by Neal Dooley constituted commission income. Petitioners insist that, even in *60 the absence of accurate records by Neal Dooley, respondent should have made some adjustment in the deficiency notice for commission income which Dooley did not receive. According to them respondent was required to investigate further after learning of the check cashing scheme. Generally, a deficiency determination made by respondent in a notice of deficiency is presumed to be correct, and the burden of proof is upon the taxpayer to establish that the determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). However, the presumption of correctness may be rebutted and the burden of going forward with the evidence shifted to respondent if the taxpayer can establish by a preponderance of the evidence that the deficiency was arbitrary or without foundation. Helvering v. Taylor, 293 U.S. 507, 515 (1935); Dellacroce v. Commissioner, 83 T.C. 269, 280, 287 (1984); Llorente v. Commissioner, 74 T.C. 260, 264 (1980), affd. in part and revd. and remanded in part 649 F.2d 152 (2d Cir. 1981); Jackson v. Commissioner, 73 T.C. 394, 401 (1979). In the *61 absence of such a showing we will not go behind a notice of deficiency to examine the evidence used by respondent in making his determination. Shriver v. Commissioner, 85 T.C. 1, 3 (1985). An exception to the above rule is where respondent, in a case involving unreported illegal income, introduces no substantive evidence as to the source of the income, but rests on the presumption of correctness and petitioner challenges the deficiency on the ground that it is arbitrary. Jackson v. Commissioner, supra. The instant case does not fall within the exception because here there is evidence, even an admission by petitioners, that some of the checks received by Neal Dooley from Roshto and Flame represented commission income. Hence, respondent did not merely rest on the presumption of correctness as to such income. He relied on checks drawn on the bank accounts of Roshto and Flame which were endorsed by Neal Dooley. Consequently, we conclude that respondent's determination on this issue is not arbitrary and the burden of going forward with the evidence is not shifted to him. Nevertheless, under the circumstances set forth in our findings, *62 we also conclude that Neal Dooley's explanation that his endorsement appeared on some of the checks only to facilitate Roshto's check cashing arrangement is worthy of belief. In fact, even respondent's agents gave at least some credence to his explanation because upon learning of it they attempted to use Dooley in their investigation of Roshto. Even though the attempt failed, Roshto eventually pleaded guilty to a charge which included involvement in a check cashing arrangement with Dooley in 1982. In fact, at the trial of this matter respondent's special agent testified that at the time of his plea, Roshto told her that approximately 70 percent of the checks at issue in this case were part of the check cashing arrangement he had with Dooley. From the foregoing, as well as from the record as a whole, we conclude that during 1979 and 1980 Neal Dooley received commission checks from Roshto and Flame in the amounts of $ 5,719.75 and $ 9,507.00, respectively, as set forth in the second stipulation for trial, and that during 1981 he received commission checks from Roshto and Flame in the amount of $ 46,541.60 as set forth in the partial agreement of November 12, 1986. b. Capital *63 gains
Respondent determined that Neal Dooley realized capital gains as follows: (1) Long-term capital gain in the amount of $ 9,337.50 as a result of the sale on January 23, 1979, of the 18.91-acre parcel of land in Livingston Parish; (2) a short-term capital gain in the amount of $ 3,250 as a result of the assignment of the Livingston Parish mineral rights in 1979, and (3) a long-term capital gain in the amount of $ 22,500 as a result of the sale of Contractor's Accounting. Petitioners have the burden of proof on this issue. Rule 142(a); Helvering v. Welch, supra. Petitioners introduced no evidence on this issue other than the uncorroborated testimony of Neal Dooley that the third transaction was a sham sale to Roshto of Contractor's Accounting, which was worthless, for $ 23,500 as part of the check cashing arrangement. Without independent corroboration such testimony is unacceptable. Archer v. Commissioner, 73 T.C. 963 (1980). We conclude, therefore, that petitioners have not carried their burden of proof on this issue and sustain respondent's determinations with respect to the capital gains. c. Interest income
Respondent determined that *64 during 1981, Neal Dooley received interest income, in the amount of $ 1,049.94, from payments made with respect to a mortgage note that he held for 9 months during 1981. Petitioners have the burden of proof on this issue. Rule 142(a); Helvering v. Welch, supra. Petitioners contend that Neal Dooley merely acquired the note in a sham transaction, the purpose of which was to permit Roshto to make a gift to a third party. Here again the record contains no evidence on the issue other than Neal Dooley's uncorroborated testimony. Without corroboration such testimony is unacceptable and petitioners have failed to carry their burden of proof. Respondent's determination on this issue is sustained. Archer v. Commissioner, supra.
2. Community Income of Marilyn Dooley
Marilyn Dooley contends that none of the commission income, capital gain, or interest income earned by Neal Dooley during 1979, 1980, or 1981 is taxable to her as community property income. The community property laws of Louisiana determine the ownership of the income of petitioners for Federal income tax purposes since throughout the years in issue they were married, maintained their *65 legal residence in Louisiana, and were not parties to a matrimonial agreement excluding the community property regime, or a judgment decreeing a separation of their property. La. Civ. Code Ann. art. 2334, 2370 (West 1985); United States v. Mitchell, 403 U.S. 190, 197 (1971). Therefore, they are each required to report one-half of their community income. United States v. Malcolm, 282 U.S. 792 (1931). The same is true for deductions to the extent deductible items are paid with community funds or relate to community property. One-half of such deductions belong to each spouse. Johnson v. Commissioner, 72 T.C. 340 (1979); Clemens v. Commissioner, 8 T.C. 121 (1947). Community property is defined under Louisiana law as "property acquired during the existence of the legal regime through the effort, skill, or industry of either spouse; * * * and all other property not classified by law as separate property." La. Civ. Code Ann. art. 2338 (West 1985). There is a rebuttable presumption that all things acquired during the marriage are community property. La. Civ. Code Ann. art. 2340 (West 1985). Therefore, *66 the wages of Marilyn Dooley and the commission income of Neal Dooley during 1979, 1980, and 1981 constitute community property income and are allocable one-half to each since they were admittedly acquired through their personal effort, skill, and industry. We have found that during the years at issue Neal Dooley engaged in four transactions which resulted in capital gains. Since Marilyn Dooley has not attempted to rebut the presumption that these amounts constitute community property, they are allocable one-half to each petitioner. We have also found that during 1981 Neal Dooley received $ 1,049.94 in interest from payments on a mortgage note and that petitioners received small amounts of interest from bank accounts during each of the years in dispute. In the absence of a written agreement to the contrary, any such interest earned during the existence of their marriage is community income regardless of whether it is derived from community or separate property. La. Civ. Code Ann. art. 2339 (West 1985). Therefore, one-half of such income is taxable to each petitioner. Marilyn Dooley contests respondent's determination that one-half of her medical and dental expenses should be *67 allocated to Neal Dooley. Since she has not established that the medical and dental expenses were paid from her separate property, one-half of these expenses are allocable to Neal Dooley. Clemens v. Commissioner, supra.
3. Innocent Spouse Under Section 66(c)
Marilyn Dooley seeks relief as an innocent spouse under section 66(c) from the application of the Louisiana community property laws with respect to the income of Neal Dooley. Section 66(c) provides as follows: (c) Spouse Relieved of Liability in Certain Other Cases. -- Under regulations prescribed by the Secretary, if -- (1) an individual does not file a joint return for any taxable year, (2) such individual does not include in gross income for such taxable year an item of community income properly includible therein which, in accordance with the rules contained in section 879(a), would be treated as the income of the other spouse, (3) the individual establishes that he or she did not know of, and had no reason to know of, such item of community income, and (4) taking into account all facts and circumstances, it is inequitable to include such item of community income in such individual's *68 gross income,
then for purposes of this title, such item of community income shall be included in the gross income of the other spouse (and not in the gross income of the individual). Marilyn Dooley has the burden of proof on this issue. Rule 142(a). From the record as a whole, we find that Marilyn Dooley has satisfied all of the requirements of section 66(c) with respect to the capital gains received and the income earned by Neal Dooley as compensation for cashing checks for Roshto. Therefore, since petitioners did not file a joint return and she was unaware of his capital gains or his involvement in the check cashing arrangement, it would be inequitable to include any part of this community income in her gross income. However, Marilyn Dooley has failed to establish that she did not know that her husband was receiving commission income during the years at issue. In fact, we have found that Marilyn Dooley was aware that Neal Dooley was receiving commission income. It is not determinative that she may have been unaware of the exact amount of his commission income. Roberts v. Commissioner, 860 F.2d 1235, 1239 (5th Cir. 1988), T.C. Memo. 1987-391. *69 Furthermore, with respect to the interest received on the mortgage note and from the bank, Marilyn Dooley has not established that this income was derived from the separate property of Neal Dooley, or if so, that she was unaware of it. Therefore, the interest is presumed to be community income of which one-half is taxable to her. Sec. 879(a)(4); La. Civ. Code Ann. art. 2339 (West 1985). 4. Statute of Limitations
Marilyn Dooley contends that the assessment of any deficiency in her income tax for 1979 and 1980 is barred by the statute of limitations provided by section 6501(a) since respondent's deficiency notice was not mailed to her within 3 years after her 1979 and 1980 returns were filed. Respondent contends that an assessment for 1979 and 1980 is not time barred because the 6-year statute of limitations provided by section 6501(e)(1)(A) is applicable. Respondent has the burden of proof with respect to the applicability of the 6-year period of limitations. Reis v. Commissioner, 1 T.C. 9, 12-13 (1942), affd. 142 F.2d 900 (6th Cir. 1944). In order to satisfy his burden, respondent must show that Marilyn Dooley omitted an amount in *70 excess of 25 percent of the gross income required to be shown on her returns for 1979 and 1980. Sec. 6501(e)(1)(A); Davenport v. Commissioner, 48 T.C. 921, 928 (1967). Respondent argues that all of the checks drawn on the accounts of Roshto and Flame and made payable to and endorsed by Neal Dooley during 1979 and 1980 constitute commission income to Neal Dooley and hence under Louisiana law community income of which 50 percent is attributable to Marilyn Dooley. However, we have found that in 1979 and 1980 Neal Dooley received commission checks from Roshto and Flame in the amounts of only $ 5,719.75 and $ 9,507.00, respectively. Therefore, if in accordance with our findings a computation under Rule 155 reveals that there was a 25-percent omission by Marilyn Dooley in either 1979 or 1980, the 6-year statute is applicable for that year. Otherwise an assessment is barred under section 6501.
5. Additions to Tax Under Section 6651(a)(1) and (2)
Respondent determined that Neal Dooley is liable for additions to tax for 1979, 1980, and 1981, under section 6651(a)(1) and (2) for failure to file timely returns and to pay the tax. Since Neal Dooley pleaded guilty *71 under section 7203 of willfully failing to file income tax returns for 1979, 1980, and 1981, he is collaterally estopped from denying that his failure to file and pay was willful within the meaning of section 6651(a)(1) and (2). Gemma v. Commissioner, 46 T.C. 821, 834 (1966). [5] Accordingly, respondent's determination of additions to tax under section 6651(a)(1) and (2) is sustained. 6. Additions to Tax Under Section 6653(a)
Respondent determined that Neal Dooley is liable for additions to tax under section 6653(a) for 1979 and under section 6653(a)(1) and (2) for 1980 and 1981 for negligence or the intentional disregard of rules or regulations. On this issue respondent's determinations are presumptively correct and petitioner has the burden of proof. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). Neal Dooley *72 failed to keep records regarding his commission income and failed to file tax returns for the years at issue. Such failures constitute negligence at the very least. Emmons v. Commissioner, 92 T.C. 342, 349 (1989), affd. 898 F.2d 50 (5th Cir. 1990); Schroeder v. Commissioner, 40 T.C. 30, 34 (1963). To reflect the foregoing as well as concessions by the parties. Decisions will be entered under Rule 155. Footnotes
1. Although Marilyn G. Dooley appeared pro se at trial, Patrick N. Dooley, with the Court's permission, filed a joint brief on behalf of both petitioners.↩
2. Unless otherwise indicated all section references are to the Internal Revenue Code of 1954 in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. 50% of the statutory interest due on $ 63,685. ↩
3. In his notice of deficiency to petitioner wife, respondent allocated one-half of her withholding credits to petitioner husband and increased her deficiency by the same amount. By a footnote to his determination of the deficiencies due from petitioner husband, respondent indicated that the ultimate liability of petitioner husband would be reduced by one-half of petitioner wife's withholding credits. In her petition, petitioner wife assigned error to respondent's allocation of the withholding credits. However, at trial and on brief petitioner wife failed to address this issue. Consequently, we assume the issue has been abandoned.↩
4. In the notice of deficiency mailed to Neal Dooley, respondent determined greater amounts of unreported commission income for 1979, 1980, and 1981 than was determined in the notice of deficiency mailed to Marilyn Dooley. However, on brief respondent waived any increase in the deficiencies against Marilyn Dooley which may result from such increase in Neal Dooley's commission income.↩
5. See also Paddock v. Commissioner, T.C. Memo. 1985-586; Gullot v. Commissioner, T.C. Memo. 1966-58↩.