T.C. Memo. 1996-139

UNITED STATES TAX COURT

PATTI ANN OLLESTAD, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22197-91.                          Filed March 20, 1996.

Patti Ann Ollestad, pro se.

<u>Dan Orzechowski</u>, for respondent.

MEMORANDUM OPINION

NAMEROFF, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]  Respondent determined the following deficiencies and
additions to tax in petitioner's 1982, 1983, 1984, and 1985

---

[1]     All section references are to the Internal Revenue Code
in effect for the years at issue.  All Rule references are to the
Tax Court Rules of Practice and Procedure.

Federal income taxes:                                              Additions to Tax

| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6653(a)(1)[1] | Sec. 6654(a) |
|------|-----------|-----------------|---------------------|--------------|
| 1982 | $1,441 | $360 | $72 | $140 |
| 1983 | 884 | 221 | 44 | 54 |
| 1984 | 902 | 226 | 45 | 57 |
| 1985 | 2,122 | 531 | 106 | 121 |

[1]   In addition, respondent determined that petitioner was liable for an addition to tax under sec. 6653(a)(2) in the amount of 50 percent of the interest payable with respect to the portion of the underpayment attributable to negligence for each of the years in issue.

In the notice of deficiency, respondent determined that petitioner and her former spouse, Dan Thompson (Mr. Thompson), did not file Federal income tax returns for taxable years 1982, 1983, 1984, and 1985.  In addition, respondent determined that petitioner was married and domiciled in a community property State and computed her income tax liability in accordance with community property laws.  Respondent determined that petitioner's community share of gross receipts from National Cartage Co. was $28,505 in 1982; $24,147 in 1983; $24,971 in 1984; and $36,750 in 1985.  Further, respondent determined that petitioner earned interest income of $5 in 1982 and $5 in 1983.  Respondent allowed the following business expenses:

| Year | Gross Receipts | X | Expense Percent | = | Expense | + | Deprec.[1] | = | Total Deduction | Community Share (1/2) |
|------|---------------|---|-----------------|---|---------|---|-----------|---|-----------------|----------------------|
| 1982 | $57,009 | | 41 | | $23,374 | | $8,000 | | $31,374 | $15,687 |
| 1983 | 48,294 | | 41 | | 19,801 | | 8,000 | | 27,801 | 13,901 |
| 1984 | 49,941 | | 41 | | 20,476 | | 8,000 | | 28,476 | 14,238 |
| 1985 | 73,500 | | 41 | | 30,135 | | 8,000 | | 38,135 | 19,068 |

[1]   The depreciation is based on a tractor placed in service in 1980 with a cost of $80,000, zero salvage value, 10-year useful life, and the straight-line method.

In addition, respondent allowed excess itemized deductions as follows:

| Year | Gross Receipts | X | Deduction Percent | = | Total Deduction | - | Zero Bracket | = | Excess Deduction | Community Share (1/2) |
|------|------|---|------|---|------|---|------|---|------|------|
| 1982 | $57,009 | | 9 | | $5,131 | | $3,400 | | $1,731 | $866 |
| 1983 | 48,294 | | 9 | | 4,346 | | 3,400 | | 946 | 473 |
| 1984 | 49,941 | | 9 | | 4,495 | | 3,400 | | 1,095 | 548 |
| 1985 | 73,500 | | 9 | | 6,615 | | 3,540 | | 3,075 | 1,538 |

Respondent also allowed petitioner two exemptions for each of the years at issue.

After concessions,[2] the issue remaining for decision is whether petitioner is entitled to relief from the deficiencies as an innocent spouse for the years in issue.

At the time of the filing of this petition, petitioner resided in Moreno Valley, California. The stipulation of facts, supplemental stipulation of facts, and attached exhibits are incorporated herein by this reference.

Petitioner did not complete the ninth grade. Petitioner married Mr. Thompson in 1976, 1 month before she turned 16 years old. Prior to and during her marriage, petitioner was not employed. Petitioner and Mr. Thompson had two children: Danny, who was born in 1976, and Tricia, who was born in 1980. Petitioner's responsibilities were to care for the children and do the grocery shopping.

[2] Respondent conceded all additions to tax under secs. 6651(a)(1), 6653(a)(1) and (2), and 6654(a). In addition, respondent allowed additional business deductions for 1982 in the amount of $4,266.15; for 1983 in the amount of $3,001.90; for 1984 in the amount of $3,241.35; and for 1985 in the amount of $6,657. The result of these concessions by respondent is that the deficiencies decreased to $573 for 1982; $398 for 1983; $399 for 1984; and $762 for 1985.

During the years at issue, Mr. Thompson worked for Dan Thompson Trucking (Trucking),[3] a partnership he had formed with his father Harry Thompson. Trucking employed several truck drivers; however, Trucking did not employ a bookkeeper or a secretary. Mr. Thompson maintained the books and records for Trucking. Trucking's business office was not located in the marital home, and Mr. Thompson did not conduct business in the marital home. Petitioner did not work or perform services for Trucking and did not help generate income for the business.

Petitioner and Mr. Thompson had one checking account. This account was used for business and personal purposes. Petitioner was allowed to write checks or make deposits only with Mr. Thompson's permission. Petitioner wrote checks for groceries or clothes for the children. Petitioner never purchased, and was not given, jewelry or furs. On occasion, Mr. Thompson asked petitioner to write checks between the amounts of $100 and $400 for "cash". Petitioner gave the money from these checks to Mr. Thompson, who used the money to pay truck drivers for fuel and for various personal expenses. Sometimes, Mr. Thompson requested that petitioner make deposits to the checking account. Petitioner did not know the source of the funds she deposited.

---

[3] In view of the manner in which both parties presented this case, we must assume that National Cartage Co. is either a former name of Trucking or perhaps a "d.b.a.". Thus, we will regard respondent's determination in the notice of deficiency as relating to Trucking.

Mr. Thompson also wrote checks on and made deposits to this account. Petitioner did not see the monthly checking account statement and did not balance the checkbook.

At the beginning of their marriage, petitioner drove an 8-year-old Cadillac which petitioner and Mr. Thompson had purchased from their neighbors. Mr. Thompson later gave the Cadillac to his son from a previous marriage. Sometime between 1982 and 1985, Mr. Thompson purchased a Cadillac El Dorado, which was titled in both petitioner's and Mr. Thompson's names. It is unclear whether the El Dorado was new or used. Petitioner used the car for transportation for herself and the children. Mr. Thompson sometimes drove a truck and parked it at the marital home; however, he also drove the El Dorado.

Petitioner and Mr. Thompson separated in July of 1985. Pursuant to a court order, Mr. Thompson and petitioner were ordered to share the residence. At first, they lived during alternate weeks in the house; however, they were subsequently ordered by the court to live in separate areas of the house at the same time. Sometime in October or November 1985, petitioner permanently left the marital home to live with her mother. Tricia continued to reside in the marital home with Mr. Thompson. It is unclear whether Danny resided with Mr. Thompson.

Petitioner's divorce from Mr. Thompson became final on September 7, 1986. Pursuant to the Division of Property Order

dated July 15, 1986, the Superior Court of the State of California for the County of Los Angeles (the divorce court) ordered the marital home to be sold for $104,500. A portion of the proceeds was used to pay various community obligations. Petitioner received $5,500 as an equalizing payment to offset the receipt of a truck by Mr. Thompson, and she received an additional $4,383.35 from the sale proceeds of the marital home. The divorce court also ordered the sale of various trucking equipment and division of the sale proceeds among Mr. Thompson, petitioner, and Mr. Thompson's parents.[4] The divorce court noted that certain property was the separate property of Mr. Thompson, other property was the separate property of petitioner, and certain property was sold. The court retained jurisdiction over a trailer located in Grass Valley, California. The record contains no information regarding the value or disposition of this trailer. Petitioner and Mr. Thompson were to divide the furniture and camping equipment. However, Mr. Thompson resided in the marital home, so petitioner never received any of the furniture. Petitioner did receive photo albums of the children. Petitioner and Mr. Thompson were awarded joint custody of the children.

---

[4] Petitioner testified that this equipment was never sold.

For the years at issue, neither petitioner nor Mr. Thompson filed an income tax return.

Discussion

Petitioner seeks relief as an innocent spouse from the revised deficiencies determined by respondent. Because petitioner and Mr. Thompson were nonfilers during the years at issue, petitioner is not entitled to relief as an innocent spouse under the provisions of section 6013(e).[5]

Rather, we must examine the provisions of section 66(c) to determine whether petitioner qualifies for relief as an innocent spouse. The purpose of section 66(c) is to provide relief from unreported community income which, pursuant to the provisions of section 879(a), is more appropriately attributable to the other spouse. Lucia v. Commissioner, T.C. Memo. 1991-77, affd. without published opinion 962 F.2d 14 (9th Cir. 1992).

---

[5] If a husband and wife file a joint return, sec. 6013(d)(3) provides that each spouse becomes jointly and severally liable for the tax due. A spouse, however, may be relieved of such liability if he or she proves entitlement to innocent spouse protection under sec. 6013(e). Sec. 6013(e) provides relief if (1) a joint tax return has been filed for the year at issue, (2) there is a substantial understatement of tax attributable to grossly erroneous items of the other spouse on the return, (3) the innocent spouse establishes that, in signing the return, he or she did not know or have reason to know of the substantial understatement, and (5) under all the facts and circumstances, it would be inequitable to hold the innocent spouse liable for the deficiency in tax resulting from the substantial understatement.

To qualify for relief under section 66(c), petitioner must satisfy the following provisions: (1) She must not have filed a joint return with Mr. Thompson for any of the years at issue; (2) she must not have included in her gross income for any of the years in issue an item of community income properly includable therein which, in accordance with the rules contained in section 879(a), would be treated as the income of Mr. Thompson; (3) she must establish that she did not know, and had no reason to know, of the item of community income; and (4) taking into account all facts and circumstances, it is inequitable to include such item of community income in her gross income. Under section 66(c), all four of the above requirements must be met before relief can be granted. Roberts v. Commissioner, 860 F.2d 1235, 1238 (5th Cir. 1988), affg. T.C. Memo. 1987-391.

The first requirement is satisfied since petitioner did not file a return during the years at issue. In addition, the first portion of the second requirement is satisfied since petitioner did not include items of community property in her gross income which were properly includable therein.

With respect to the second portion of section 66(c)(2), section 879(a) attributes (1) earned income to the spouse who performed the services and (2) trade or business income in accordance with section 1402(a)(5). The income earned from Trucking constitutes income derived from a trade or business.

Therefore, we look to section 1402(a)(5), which provides as follows:

(5) if-

  *     *     *     *     *     *     *

> (B) any portion of a partner's distributive share of the ordinary income or loss from a trade or business carried on by a partnership is community income or loss under community property laws applicable to such share, all of such distributive share shall be included in computing the net earnings from self-employment of such partner, and no part of such share shall be taken into account in computing the net earnings from self-employment of the spouse of such partner;

We find that the income from Trucking is properly attributable to Mr. Thompson. Petitioner had nothing to do with the management or control of Trucking. Other than making a few deposits or cashing some checks under the specific direction of Mr. Thompson, petitioner was not involved in the operations of Trucking. Accordingly, the second part of section 66(c)(2) is satisfied with respect to the income derived from Trucking.

The issue of whether petitioner knew or should have known of the unreported income is essentially factual. We are convinced that petitioner had no actual knowledge of the unreported income. However, petitioner must also prove that a reasonably prudent person with her knowledge of surrounding circumstances would not and should not have known of the understatement, keeping in mind her level of intelligence, education, and experience. Sanders v.

United States, 509 F.2d 162, 166-167 (5th Cir. 1975); Terzian v. Commissioner, 72 T.C. 1164, 1170 (1979).  We conclude that a reasonably prudent person in petitioner's position would not have had reason to know of the unreported community income from Trucking during the years at issue.

In arriving at this conclusion, we emphasize that petitioner did not complete the ninth grade and was not sophisticated with respect to financial or tax matters.  Prior to and during her marriage, petitioner did not hold a job.  Apparently, she had no experience with paychecks or income taxes and never filed an income tax return.  Moreover, there is no indication of lavish or extravagant expenditures that might have given petitioner reason to know of the unreported income.  Rather, petitioner lived a modest lifestyle.

Trucking was a partnership between Mr. Thompson and his father.  Petitioner was unfamiliar with the financial condition and business operations of Trucking.  Taxation of income from a partnership is far more complicated than the taxation of an employee's wages.  A partner's income is based upon his or her "distributive share" of a partnership's tax items.  Sec. 702(a).  Without going into an elaborate explanation of partnership accounting, we merely note that a partner might have take-home money, without having taxable income from the partnership; e.g., a draw.  Consequently, petitioner did not have reason to know of

any unreported community income.  This is not the case where petitioner knew that Mr. Thompson had earnings from Trucking but did not know the exact amount of those earnings.  Cf. <u>Horner v. Commissioner</u>, T.C. Memo. 1994-447 (spouse knew her husband worked full time and earned substantial income); <u>McGee v. Commissioner</u>, T.C. Memo. 1991-510, affd. 979 F.2d 66 (5th Cir. 1992) (spouse knew her husband earned income from his dental practice which was primary means of support and that his records were not kept in order); <u>Thatcher v. Commissioner</u>, T.C. Memo. 1988-537 (spouse knew her husband's dental practice earned money and that the dental equipment was community property which generated income); <u>Baldwin v. Commissioner</u>, T.C. Memo. 1986-342 (spouse previously filed joint returns with her husband which disclosed income; she knew her husband earned a salary from teaching at a university; and she knew that his salary remained the same throughout the years in issue).  Accordingly, the third requirement is satisfied.

Finally, taking into account all of the facts and circumstances, we conclude that it would be inequitable to include the unreported community income from Trucking in petitioner's gross income.  There is no evidence that she benefited significantly from this income.  Petitioner did not live extravagantly and was given money by Mr. Thompson only for groceries and clothing for the children.  She took nothing away

from the marriage beyond photo albums, a car and water skis, and $9,883.35 from the sale of the marital home.

Based on the foregoing, we conclude that petitioner is relieved of tax liability under section 66(c).

<u>Decision will be</u>

<u>entered for petitioner</u>.