T.C. Memo. 2014-144

UNITED STATES TAX COURT

VALTEAU, HARRIS, KOENIG AND MAYER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5584-09L.                    Filed July 21, 2014.

<u>James R. Washington, III</u> and <u>Jason R. Anders</u>, for petitioner.

<u>Ardney J. Boland, III</u> and Steven Gallo (student), for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  This is a collection due process (CDP) appeal pursuant to

section 6330(d)[1] for petitioner's employment tax, unemployment tax, and income

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code (Code) in effect at all relevant times, and all Rule references are to
the Tax Court Rules of Practice and Procedure.

[*2] tax liabilities for 26 different periods (periods at issue). The unpaid balances

for the various accounts are as follows:

| Type | Form | Period | Balance[1] |
|---|---|---|---|
| Employment | Form 941 | 12/31/99 | $167.10 |
| Employment | Form 941 | 9/30/00 | 475.30 |
| Employment | Form 941 | 3/31/01 | 1,751.03 |
| Employment | Form 941 | 6/30/01 | 1,599.93 |
| Employment | Form 941 | 9/30/01 | 1,532.36 |
| Employment | Form 941 | 12/31/01 | 961.77 |
| Employment | Form 941 | 3/31/02 | 1,407.74 |
| Employment | Form 941 | 6/30/02 | 1,334.37 |
| Employment | Form 941 | 9/30/02 | 277.51 |
| Employment | Form 941 | 12/31/02 | 64.88 |
| Employment | Form 941 | 3/31/03 | 5,350.43 |
| Employment | Form 941 | 6/30/03 | 5,116.89 |
| Employment | Form 941 | 9/30/03 | 5,474.01 |
| Employment | Form 941 | 12/31/03 | 335.22 |
| Employment | Form 941 | 6/30/04 | 64.71 |
| Employment | Form 941 | 9/30/04 | 949.55 |
| Employment | Form 941 | 3/31/05 | 59.74 |
| Employment | Form 941 | 6/30/05 | 5,115.10 |
| Employment | Form 941 | 9/30/05 | 1,722.81 |
| Employment | Form 941 | 12/31/05 | 1,068.98 |

| [*3] Employment | Form 941 | 9/30/06 | 712.59 |
|---|---|---|---|
| Unemployment | Form 940 | 1999 | 1,745.31 |
| Unemployment | Form 940 | 2000 | 936.23 |
| Unemployment | Form 940 | 2005 | 23.70 |
| Income Tax | Form 1065 | 2004 | 750.00 |
| Income Tax | Form 1065 | 2006 | 840.00 |

[1] Amounts are exclusive of accrued, but unassessed, interest.

After concessions,[2] two issues remain for our consideration:

(1) whether respondent is required to apply certain fund transfers as petitioner directed on its Federal tax deposit forms.  We hold he is not.

(2) whether petitioner is entitled to an abatement of the tax, additions to tax, or tax penalties for any of the periods at issue.  We hold that it is not.

FINDINGS OF FACT

Petitioner is a New Orleans law firm that began operations in 1990 and had a principal place of business in Louisiana when it filed its petition.  Before the periods at issue petitioner relied on a certified public accountant (C.P.A.) to help it

_____

[2] In keeping with a 2008 IRS Appeals Office decision, respondent has relieved petitioner of its liability for penalties and additions to tax resulting from the following:  (1) its failure to timely file its employment tax returns for the third and fourth quarters of 2005, (2) its failure to timely file its Federal unemployment tax return for 2005, and (3) its failure to timely make payments and deposits for those periods.

[*4] meet its various tax obligations.  At some point petitioner terminated its relationship with the C.P.A., and Edmond Harris, petitioner's tax matters partner, assumed responsibility for filing petitioner's tax returns and for meeting various remittance deadlines.

Petitioner failed to timely file any of the returns for the 26 periods at issue. It did, however, make 31 separate remittances partially satisfying the liabilities it incurred during those periods.  Petitioner made the remittances as if they were Federal tax deposits.  It prepared Forms 8109-B, Federal Tax Deposit Coupon (FTD coupon or coupon), and submitted them with the remittances to banks authorized to accept tax deposits.  The FTD coupons indicated the period to which the remittances were to apply as did the memo line of each check.  Petitioner designated many of the remittances to satisfy past due liabilities.  Because the coupons and payments were submitted to banks rather than to respondent, respondent did not always receive petitioner's designation instructions. Respondent allocated only 20 of the payments in accordance with petitioner's instructions.

Although it failed to timely pay its employment and unemployment taxes during the periods at issue, petitioner continued to operate as usual.  Petitioner never missed a payroll and continued to make bonus payments to its employees.

**[*5]** Petitioner also organized yearend parties for its employees and took only minimal steps to reduce its expenses.

Respondent determined that petitioner had underpaid its employment and unemployment taxes for the periods at issue and that petitioner is liable for additions to tax under section 6651 for failing to timely file employment and unemployment tax returns. He also determined that petitioner is liable for penalties under section 6656 for failing to make tax deposits and under section 6698 for failing to file its partnership returns. If respondent had allocated petitioner's payments as it had requested, its penalties and additions to tax would have been less.

Between February and April 2008 respondent issued petitioner two notices of intent to levy and four notices of Federal tax lien filing for collection of the tax liabilities for the periods at issue. Petitioner timely requested CDP hearings for the various collection notices.

Petitioner's CDP hearing was assigned to an Internal Revenue Service (IRS) settlement officer (SO). Mr. Harris met with the SO and gave her documents he believed demonstrated that the IRS had misapplied certain fund transfers. Mr. Harris requested that the IRS reallocate the funds because he believed the reallocation would significantly reduce petitioner's tax liabilities. Mr. Harris also

**[\*6]** disputed respondent's determination of petitioner's tax liability for the fourth quarter of 1999. Mr. Harris then told the SO that all additions to tax, penalties, and interest should be abated because (1) all tax was eventually paid and (2) Mr. Harris was not qualified to handle petitioner's tax liabilities even though he was designated as petitioner's tax matters partner.

After reviewing the evidence, the SO concluded that respondent had properly applied all of the funds. The SO further concluded that respondent had properly determined petitioner's fourth quarter 1999 employment tax liability and that the arguments presented did not justify abating the additions to tax and penalties for the periods at issue. On the basis of these conclusions, the SO sustained respondent's proposed collection action. Petitioner timely petitioned the Court for review of the SO's determinations.

OPINION

I.    Jurisdiction

Petitioner comes before us pursuant to section 6330(d) to appeal the SO's determinations in its CDP hearing. Our jurisdiction under section 6330(d) is established when there is (1) a written notice that embodies a determination to proceed with the collection of taxes in issue and (2) a timely filed petition. Lunsford v. Commissioner, 117 T.C. 159, 164 (2001).

**[*7]**    Petitioner received two levy notices and four lien notices for collection of the 26 tax liabilities at issue, and it timely filed a petition challenging the notices. Therefore, we have jurisdiction under section 6330(d).

## II.    CDP Hearing and Standard of Review

The lien and levy notices gave petitioner a statutory right to a CDP hearing with the Appeals Office, which petitioner requested.  During a CDP hearing a taxpayer may raise any relevant issue, including challenges to the appropriateness of the collection action and possible collection alternatives.  Sec. 6330(c)(2)(A). At a CDP hearing a taxpayer may challenge its underlying liability if it has had no prior opportunity to contest the liability.  Sec. 6330(c)(2)(B),

When the underlying tax liability was properly at issue in the CDP hearing, we review the Appeals officer's determination de novo.  Sego v. Commissioner, 114 T.C. 604, 610 (2000).  When a taxpayer's underlying tax liability is not in dispute, the Court reviews the officer's determination for abuse of discretion.  See id.; Goza v. Commissioner, 114 T.C. 176, 182 (2000).

At the CDP hearing petitioner disputed respondent's determination of its employment tax liability for the fourth quarter of 1999 and its liability for penalties and additions to tax for all periods.  Because petitioner had had no prior opportunity to challenge those liabilities, they were properly before the SO.  We

**[\*8]** will accordingly review de novo respondent's determinations with respect to those liabilities.

Petitioner also challenges the SO's decision not to have its remittances reallocated in accordance with its instructions. There is some uncertainty in our precedents as to whether a de novo standard of review applies where (as here) the controversy concerns the proper application, to the tax liability at issue in the CDP hearing, of a credit, an overpayment, or a remittance.[3] Petitioner contends that respondent's refusal to honor its designation was inconsistent with a published IRS administrative position. If that is so, respondent's proposed collection action would be impermissible under either standard. We accordingly do not need to decide whether petitioner's challenge involves a dispute concerning its underlying tax liability as to which a de novo standard of review would apply.

---

[3]Compare Landry v. Commissioner, 116 T.C. 60, 62 (2001) (applying de novo standard where taxpayer challenged application of overpayment credits, reasoning that "the validity of the underlying tax liability, i.e., the amount unpaid after application of credits to which petitioner is entitled, * * * [was] properly at issue"), with Kovacevich v. Commissioner, T.C. Memo. 2009-160 (applying abuse of discretion standard where taxpayer challenged application of tax payments, reasoning that "questions about whether a particular check was properly credited to a particular taxpayer's account for a particular tax year are not challenges to his underlying tax liability"), and Orian v. Commissioner, T.C. Memo. 2010-234 (same).

**[*9]** III.    Allocation of Fund Transfers

From 2000 to 2007 petitioner attempted to direct the application of 31 fund transfers, totaling $55,398.61, to the periods at issue. The IRS applied 20 of those transfers as petitioner requested but not the remaining 11 (disputed transfers). During the CDP hearing petitioner requested that the SO have the fund transfers reallocated. The SO reviewed petitioner's documents and respondent's records and concluded that respondent had properly applied all 31 transfers. We must determine whether the SO properly denied petitioner's reallocation request for the disputed transfers, totaling $24,093.44. We hold that she did.

The Code and our jurisprudence recognize a distinction between tax deposits and tax payments. See secs. 6656 (penalty for failure to make deposits), 6651(a)(2) (addition to tax for failure to pay tax); Romano-Murphy v. Commissioner, T.C. Memo. 2012-330, at *64-*65. A deposit represents a remittance that is held by the IRS, on behalf of the taxpayer, in a manner similar to a cash bond, whereas a payment represents a remittance that "discharges or pays a deemed or assessed tax liability". Nicholas Acoustics & Specialty Co. v. United States, 644 F.3d 254, 257 (5th Cir. 2011).

The distinction between deposits and payments is important when a taxpayer attempts to designate the period to which a remittance should be applied

[*10] because the applicable designation rules depend on the remittance's classification. When the remittance is a deposit, section 6656(e) provides the rules under which the period may be designated: taxpayers may designate the period to which late deposits should be applied only within 90 days of receiving notice that the Commissioner has imposed failure to deposit penalties. When the remittance is a payment, Rev. Proc. 2002-26, sec. 3.01 and 3.02, 2002-1 C.B. 746, 746, provides the designation rules:

> If additional taxes, penalty, and interest for one or more taxable periods have been assessed against a taxpayer (or have been mutually agreed to as to the amount and liability but are unassessed) at the time the taxpayer voluntarily tenders a partial payment that is accepted by the Service and the taxpayer provides specific written directions as to the application of the payment, the Service will apply the payment in accordance with those directions.

> If additional taxes, penalty, and interest for one or more taxable periods have been assessed against a taxpayer (or have been mutually agreed to as to the amount and liability but are unassessed) at the time the taxpayer voluntarily tenders a partial payment that is accepted by the Service and the taxpayer does not provide specific written directions as to the application of payment, the Service will apply the payment to periods in the order of priority that the Service determines will serve its best interest. * * *

The parties disagree about whether the remittances at issue were deposits or payments. We need not resolve this dispute, because petitioner did not satisfy either set of designation rules. Petitioner never received a failure to deposit

**[*11]** penalty notice and consequently could not designate the period to which its remittances should be applied under section 6656(e). Petitioner could not designate the period to which its remittances should be applied under Rev. Proc. 2002-26, supra, either, because it failed to provide specific designation instructions to the IRS. It communicated the instructions to the depositary bank, not to respondent, so respondent was free to apply the payments according to the best interest of the IRS.

Petitioner submitted to the bank with its remittances FTD coupons indicating the periods to which it intended the remittances to apply. Petitioner cites the coupons' instructions as the source of its right to designate the periods. In particular petitioner relies on the following two provisions: (1) "If the liability for Form 941 was incurred in one quarter and deposited in another quarter, darken the space for the quarter in which the tax liability was incurred", and (2) "Caution. Do not use these coupons to deposit delinquent taxes assessed by the IRS. Pay those taxes directly to the IRS."[4]

On the basis of these instructions, petitioner concludes (a) that it was allowed to direct its remittances to satisfy liabilities from prior periods, and (b)

---

[4]This phrasing varied somewhat over the years at issue, but its substance remained the same.

[*12] that it was free to use the FTD coupons to deposit delinquent taxes as long as the IRS had not yet assessed taxes for the designated period. We disagree.

The instructions simply allow taxpayers to use FTD coupons to make <u>current</u> tax deposits in the month following the close of the quarter in which the tax arose. For example, the March deposit for a taxpayer making monthly deposits would come due on April 15. The taxpayer would submit its deposit with the coupon and indicate that it was for liabilities incurred in the first quarter. Taxpayers may not use FTD coupons to direct late deposits to apply to prior periods.

Even if its reading of the instructions were correct, petitioner's reliance on them would be misplaced. The sources of authoritative law in the tax field are the statutes and regulations, not Government publications. <u>Casa De La Jolla Park, Inc. v. Commissioner</u>, 94 T.C. 384, 396 (1990); <u>Green v. Commissioner</u>, 59 T.C. 456, 458 (1972). Section 6656(e) allows a taxpayer to direct the application of past due deposits only during the 90-day period following its receipt of a failure to deposit penalty notice. If the FTD coupon instructions were inconsistent with section 6656(e), they would be invalid.

We also reject on policy grounds petitioner's reading of the FTD coupons' instructions. Respondent had not yet assessed petitioner's employment taxes, in

**[*13]** part because petitioner had not filed its employment tax returns. Allowing

petitioner to designate the period for application of its payments because

respondent had not yet assessed the related tax would reward petitioner for

neglecting its filing obligations. Petitioner cannot hide behind the nonassessment

of its taxes when it prevented assessment by failing to file.

Petitioner makes a similar argument in contending that Rev. Proc. 2002-26,

supra, does not apply to its remittances. Petitioner notes that, by its terms, the

revenue procedure applies only to payments of "additional taxes, penalty, and

interest * * * <u>assessed</u> against a taxpayer".[5] (Emphasis added.) Petitioner argues

that because respondent had not yet assessed the taxes for the periods at issue, the

revenue procedure does not apply to the remittances. Even if this were true, the

result would not be that the IRS was required to apply the remittances as petitioner

had requested. We would simply decide this case without relying on the revenue

procedure.

In the absence of the revenue procedure, our conclusion would be the same.

Although courts have repeatedly recognized that the IRS must honor a taxpayer's

instruction concerning how a voluntary tax payment should be applied, <u>Dixon v.</u>

_____

[5]The revenue procedure also applies to unassessed taxes, penalty, and
interest if the parties have agreed to the amount of the liability. This is not
relevant here.

[*14] <u>Commissioner</u>, 141 T.C. 173, 185 (2013), that principle cannot apply when the taxpayer has not communicated its instruction to the IRS. Petitioner communicated its instructions to the depositary bank but not to respondent. Consequently, respondent was free to apply the remittances according to the best interest of the IRS.

On the basis of our analysis, we hold that respondent did not err in failing to apply petitioner's payments as it had directed. Congress has created tax deposit requirements to protect the Treasury against insolvencies and other events that may hinder its tax collection efforts. To efficiently administer the deposit process, the IRS has authorized certain banks to receive and process tax deposits. The banks are meant to receive only current deposits; past due remittances should be submitted directly to the IRS. Petitioner improperly used the deposit process to make past due remittances. Whether those remittances were deposits or payments, petitioner failed to satisfy the requirements to bind respondent to its instructions. Accordingly, respondent was entitled to allocate the remittances according to the best interest of the IRS.

**[\*15]** IV. <u>Petitioner Is Not Entitled to an Abatement of Tax, Additions to Tax, or Penalties</u>.

Petitioner argues that it is entitled to a reduction in its underlying liability for the fourth quarter of 1999 and that it had reasonable cause for failing to timely file returns and make payments. There is some question about whether petitioner properly challenged its underlying liability during its administrative hearing. We will assume that it did and that the liability is properly at issue.

A. <u>Fourth Quarter 1999</u>

Petitioner's self-assessed employment taxes of $3,431.61 on its Form 941 for the fourth quarter of 1999. On June 17, 2002, respondent assessed $2,961.43 of additional tax; petitioner disputes this additional assessment. Petitioner relies on the following documents to support its self-assessment: (1) a copy of its Form 941 showing a tax due of $3,431.61, (2) a document purporting to be from its former C.P.A. showing a tax due of $3,431.61, with no computations, and (3) a copy of its FTD coupon and check for $3,387.94.

The taxpayer bears the burden of proving that the Commissioner's determinations are incorrect. Rule 142(a). If the taxpayer "introduces credible evidence with respect to any factual issue relevant to ascertaining" the taxpayer's liability, the burden shifts to the Secretary with respect to that issue. Sec.

**[\*16]** 7491(a)(1). Petitioner has not presented evidence sufficient to shift the burden on this issue.

None of the documents petitioner has presented demonstrate that petitioner owed less tax than respondent determined. A taxpayer's employment tax depends on its employees' wages. Petitioner's documents contain no information concerning the wages it paid its employees. The documents support the amount of employment taxes petitioner paid and reported, but they do not allow us to evaluate whether that amount was correct. Petitioner has failed to carry its burden of proving respondent's determination incorrect. Accordingly, we sustain respondent's determination of petitioner's employment tax liability for the fourth quarter of 1999.

B.    Penalties and Additions to Tax

Petitioner bears the burden of proving that it is not liable for additions to tax and penalties. See Rule 142(a)(1). Petitioner argues that it had reasonable cause for its failures to timely file, deposit, and timely pay.

The additions to tax under section 6651(a)(1) and (2) and the penalty under section 6656(a) apply unless the taxpayer proves that its failure to timely file, failure to timely pay, or failure to make deposits was "due to reasonable cause and not due to willful neglect". Courts have applied the reasonable cause exceptions

[*17] under these sections consistently. See, e.g., Del Commercial Props., Inc. v. Commissioner, 251 F.3d 210, 217-218 (D.C. Cir. 2001), aff'g T.C. Memo. 1999-411.

The penalty under section 6698(a) applies unless the taxpayer proves that its failure to file was "due to reasonable cause", but the statute does not include the phrase "not due to willful neglect" found in sections 6651 and 6656. We decline to decide whether the section 6698 reasonable cause exception differs from that in sections 6651 and 6656. Any minor differences between the standards would not change our conclusion here. For purposes of this opinion, we will assume the section 6698 reasonable cause standard is the same as that under sections 6651 and 6656.

Reasonable cause exists if a taxpayer can establish that it "exercised ordinary business care and prudence in providing for payment of * * * [its] tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship * * * if * * * [it] paid on the due date." Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. This is a heavy burden. See United States v. Boyle, 469 U.S. 241, 245 (1985); Roberts v. Commissioner, 860 F.2d 1235, 1241 (5th Cir. 1988), aff'g T.C. Memo. 1987-391. We determine whether a taxpayer exercised ordinary business care and prudence by applying a facts and circumstances test.

**[\*18]** Specifically, section 301.6651-1(c)(1), Proced. & Admin. Regs., provides:

> In determining whether the taxpayer was unable to pay the tax in spite of the exercise of ordinary business care and prudence in providing for payment of his tax liability, consideration will be given to all the facts and circumstances of the taxpayer's financial situation, including the amount and nature of the taxpayer's expenditures in light of the income (or other amounts) he could, at the time of such expenditures, reasonably expect to receive prior to the date prescribed for the payment of the tax.  Thus, for example, a taxpayer who incurs lavish or extravagant living expenses in an amount such that the remainder of his assets and anticipated income will be insufficient to pay his tax, has not exercised ordinary business care and prudence in providing for the payment of his tax liability. * * *

Petitioner contends that its failures to timely file, deposit, and timely pay were due to financial circumstances beyond its control.  As it relates to the failures to file, we cannot accept petitioner's argument.  Although petitioner's financial difficulties may have affected its ability to timely pay and make deposits, they did not affect its ability to file its returns.  See Staff IT, Inc. v. United States, 482 F.3d 792, 801 (5th Cir. 2007).

The Court of Appeals for the Fifth Circuit, to which this case is appealable, has acknowledged that there is a circuit split regarding whether financial difficulty alone can constitute reasonable cause for the failure to pay or deposit taxes.  Id. at 800.  The Court of Appeals for the Sixth Circuit uses a "bright-line rule", under

**[*19]** which financial difficulty may never constitute reasonable cause, whereas the Courts of Appeals for the Second, Third, Seventh, and Ninth Circuits use a "multi-factor test." Id. The court in Staff IT assumed the multifactor test applied and analyzed the taxpayer's financial circumstances to determine whether it exercised ordinary business care and prudence. Under the multifactor test, the court primarily assesses: (1) whether the taxpayer favored other creditors over the Government, which weighs against a finding of reasonable cause, and (2) whether the taxpayer demonstrated a willingness to decrease expenses and personnel, which weighs in favor of finding reasonable cause. Id. at 801.

Petitioner did not demonstrate a willingness to decrease its expenses, reduce salaries, or lay off personnel in an attempt to meet its tax obligations. Mr. Harris testified that petitioner did not have excess expenses to cut, because it paid only for necessities. However, during the periods at issue petitioner continued to pay for Christmas parties, provide yearend bonuses to its employees, and pay the partners all of their guaranteed payments.[6] Petitioner's preference for these expenses over its tax obligations does not demonstrate ordinary business care and prudence in providing for payment of tax liabilities. It is this type of spendthrift

---

[6]There is testimony that the partners' guaranteed payments were often delayed, but there is no corroborating evidence in the record.

**[\*20]** behavior section 301.6651-1(c)(1), Proced. & Admin. Regs., warns against.[7] The logical consequence of petitioner's actions is the imposition of additions to tax and penalties.

We also reject petitioner's other reasonable cause arguments. Mr. Harris argued at trial that the penalties should be abated because (1) all of the taxes were eventually paid and (2) though he was designated the tax matters partner, he was not qualified to handle petitioner's tax liabilities. The Code requires more than full payment of taxes; it requires timely filing and timely payment. Sec. 6651. Also, mistake as to or ignorance of the law does not amount to reasonable cause. Joyce v. Commissioner, 25 T.C. 13, 15 (1955); Rayhill v. Commissioner, T.C. Memo. 2013-181. Petitioner has failed to establish reasonable cause, and we accordingly uphold the SO's decision to sustain respondent's determination of penalties and additions to tax.

V.    Conclusion

Petitioner has failed to establish that any of the SO's determinations were incorrect, and we accordingly sustain them.

---

[7]"[A] taxpayer who incurs lavish or extravagant living expenses in an amount such that the remainder of his assets and anticipated income will be insufficient to pay his tax, has not exercised ordinary business care and prudence in providing for the payment of his tax liability."

**[\*21]** In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.