**DEL COMMERCIAL PROPERTIES, INC., Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE SERVICE, Appellee.**

No. 00–1313.

United States Court of Appeals, District of Columbia Circuit.

Argued March 13, 2001.

Decided June 8, 2001.

James P. Fuller argued the cause for appellant. With him on the briefs were David L. Forst, Kenneth B. Clark and William F. Colgin.

Kenneth W. Rosenberg, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief was Jonathan S. Cohen, Attorney. Edward T. Perelmuter, Attorney, entered an appearance.

Before: SENTELLE, TATEL and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

On July 18, 1990, Delcom Financial Ltd., a Canadian corporation, took out an $18 million loan from the Royal Bank of Canada. This loan initiated a series of transactions over the next twenty-four hours, involving five companies organized in Canada, the Cayman Islands, the Netherlands Antilles, the Netherlands, and the United States—all of which were related to each other and to Delcom Financial. The final transaction was a $14 million loan from Del Investments Netherlands B.V. ("Del BV"), a Dutch corporation, to Del Commercial Properties, Inc., an American corporation. Over the next year and a half, Del Commercial repaid Del BV, who then transferred the payments to Delcom Financial (or another related corporation), who in turn paid off the Royal Bank loan. In July 1992, Del Commercial began repaying Delcom Financial directly. Throughout this entire period, however, Del BV reported Del Commercial's interest payments on its Dutch tax returns.

In 1997, the Commissioner of Internal Revenue in the United States ("Commissioner") informed Del Commercial that it owed taxes and additions based on the interest payments it made between 1990 and 1993. *See* 26 U.S.C. §§ 881, 1442, 6651(a)(1), 6656. Del Commercial petitioned the Tax Court, claiming that in light of a treaty between the United States and the Netherlands the corporation owed no tax on interest payments made to Del BV. The Tax Court ruled against Del Commercial, finding that the series of transactions between the related companies was a sham designed solely to avoid U.S. taxes. *See Del Commercial Props., Inc. v. Commissioner*, T.C.M.1999–411, No. 1887–98, slip op. at 11, 1999 WL 1212447 (Dec. 20, 1999). Based on this ruling, the Tax Court ordered Del Commercial to pay $1,194,573 in taxes and additions. Del Commercial now appeals from the Tax Court's decision. For the reasons set forth below, we affirm.

## I. BACKGROUND

Del Commercial Properties, Inc. ("appellant") is an Illinois corporation whose principal place of business is in Ontario, Canada. It is a fourth-tier subsidiary of an affiliated group of corporations ("the Affiliated Group") whose common parent is DL Shekels Holdings Ltd. Delcom Financial,

Ltd. is a second-tier subsidiary in the Affiliated Group. Delcom Financial is a Canadian corporation that owns 100% of the outstanding stock of Delcom Holdings, Ltd., another Canadian corporation. In turn, Delcom Holdings owns 100% of Delcom Cayman, Ltd. (a corporation organized in the Cayman Islands), which owns 100% of the outstanding stock of Delcom Antilles, N.V. (a corporation organized in the Netherlands Antilles). Delcom Antilles owns 100% of the outstanding stock of Del Investments Netherlands B.V. ("Del BV"), a corporation organized in the Netherlands.

From 1990 through 1993, appellant's principal business was leasing industrial real estate it owned in the United States. In 1990, when appellant needed funding to refinance and improve some of its American properties, one of DL Shekels's first-tier subsidiaries, Tridel Corporation, arranged the following financing scheme: On July 18, 1990, the Royal Bank of Canada loaned $18 million (in U.S. dollars) to Delcom Financial. That same day, Delcom Financial made two unsecured interest-bearing loans to Delcom Holdings. One of those loans (the one directly relevant to this case) was for $14 million. Delcom Holdings then contributed "about $14 million to Delcom Cayman for common shares of stock." Stipulation of Facts at 5, *Del Commercial Props., Inc. v. Commissioner*, T.C.M.1999–411 (Oct. 22, 1998). On the same day, "Delcom Cayman contributed about $14 million to Delcom Antilles and received common shares of stock in that entity. Later on that same date, Delcom Antilles contributed about $14 million to Del BV and received common stock in that entity." *Id.* at 5–6.

The following day, July 19, appellant borrowed $14 million from Del BV. That same day, appellant "guaranteed repayment of a portion of amounts owed by Delcom Financial to Royal Bank" and authorized Royal Bank to place a mortgage on its real property in the U.S. *Id.* at 7. Appellant also agreed to provide Royal Bank with "annual financial statements, to insure its real property, to assign the insurance policies to Royal Bank, to defer paying dividends to shareholders, and to use the proceeds from any sales of real property to make payments on the $14 million Royal Bank loan." Brief for the Appellee at 6.

On January 1, 1991, appellant began repaying Del BV. Del BV transferred these payments "either to Delcom Holdings or Delcom Financial. The funds were used to pay principal and interest owed on the $14 million Royal Bank loan." *Del Commercial Props.*, T.C.M.1999–411, slip op. at 7. Beginning in July 1992, however, appellant began making its loan payments directly to Delcom Financial, "and Delcom Financial then forwarded funds to Royal Bank in payment on the Royal Bank loan." *Id.* Throughout this time, Del BV reported the interest paid by appellant as income on its Netherlands tax returns. Meanwhile, appellant did not file United States withholding tax returns or deposit withholding taxes on any payments related to the loan.

On October 30, 1997, the Commissioner provided appellant with a Notice of Deficiency stating that it owed taxes and additions based on the interest payments made between 1990 and 1993. *See* 26 U.S.C. §§ 881, 1442, 6651(a)(1), 6656. Appellant petitioned the Tax Court to determine the correct amount of taxes and additions, contending that under a treaty between the United States and the Netherlands, no tax is owed to the United States on interest payments made by an American corporation to a Dutch corporation. The Tax Court held that the series of loans and stock contributions that began with Delcom Financial and ended with appellant

"reflect a step transaction created simply to bypass U.S. withholding tax." *Del Commercial Props.*, T.C.M.1999–411, slip op. at 11. Because the appellant had not "presented any credible argument" that its failure to file a tax return or deposit withholding taxes was "attributable to reasonable cause," the Tax Court concluded that appellant owed penalties in addition to the withholding taxes. *Id.* at 13. Accordingly, the Tax Court ordered appellant to pay $1,194,573 in taxes and additions.

Appellant appeals from that decision.

## II. ANALYSIS

■ We review Tax Court decisions "in the same manner and to the same extent" as a decision issued by a district court. 26 U.S.C. § 7482. That is, questions of law are reviewed *de novo*, while questions of fact are reviewed for clear error. *See ASA Investerings P'ship v. Commissioner*, 201 F.3d 505, 511 (D.C.Cir.), *cert. denied*, 531 U.S. 871, 121 S.Ct. 171, 148 L.Ed.2d 117 (2000). As we recently noted, "in tax cases mixed questions of law and fact are to be treated like questions of fact." *Id.*

Appellant challenges the Tax Court's decision on two grounds. First, it argues that the Tax Court erred in concluding that it was responsible for withholding United States taxes on the interest payments it made to Del BV. According to appellant, the financing scheme was not designed solely to avoid U.S. taxes. Rather, the scheme sought to allow the Affiliated Group to achieve substantial Canadian tax savings, a permissible business purpose under American tax law. Second, appellant contends that even if it should have withheld U.S. taxes on the interest payments, the Tax Court erred by imposing a penalty for appellant's failure to file withholding tax returns or to deposit the withholding tax. Specifically, appellant

suggests that it should not be penalized because its decision not to withhold represented a reasonable difference of opinion with the Commissioner. We address each of these issues in turn.

### A. Withholding of Interest Payments

The Internal Revenue Code requires foreign corporations to pay "a tax of 30 percent of the amount received from sources within the United States by a foreign corporation as interest ... to the extent the amount so received is not effectively connected with the conduct of a trade or business within the United States." 26 U.S.C. § 881(a). An American taxpayer who makes such interest payments is required to deduct and withhold the tax owed by the foreign corporation. *See* 26 U.S.C. §§ 1441, 1442. If the American taxpayer fails to deduct and withhold the tax, he is personally liable for the tax due. *See* 26 U.S.C. § 1461.

Pursuant to the United States–Netherlands Tax Treaty, interest payments made by American taxpayers to Netherlands corporations are exempt from taxes in the United States. *See* Supplementary Convention on Taxes on Income and Other Taxes, Dec. 30, 1965, U.S.-Netherlands, Art. VI, 17 U.S.T. 896, 901. In contrast, under the United States–Canada Tax Treaty, the tax on interest payments "shall not exceed 15 percent of the gross amount of the interest" if the recipient of the payments is "the beneficial owner of such interest." Convention on Taxes on Income and Capital, Sept. 26, 1980, U.S.-Can., Art. XI, T.I.A.S. No. 11087.

■ Under the step-transaction doctrine, a particular step in a transaction is disregarded for tax purposes if the taxpayer could have achieved its objective more directly, but instead included the step for no other purpose than to avoid U.S. taxes.

*See Minn. Tea Co. v. Helvering*, 302 U.S. 609, 613, 58 S.Ct. 393, 82 L.Ed. 474 (1938). In step-transaction cases, "the existence of formal business activity is a given but the inquiry turns on the existence of a nontax business motive." *ASA Investerings*, 201 F.3d at 512. As we explained last year, "the absence of a nontax business purpose is fatal." *Id.* Although taxpayers "are entitled to structure their transactions in such a way as to minimize tax," there must be a purpose for the "business activity . . . other than tax avoidance" and that purpose cannot be a "facade." *Id.* at 513; *see also N. Ind. Pub. Serv. Co. v. Commissioner ("NIPSCO")*, 115 F.3d 506, 512 (7th Cir.1997) (stating that the IRS cannot "disregard economic transactions . . . which result in actual, non-tax-related changes in economic position").

■ The Internal Revenue Service—and the courts—will ignore a step in a series of transactions if that step does " 'not *appreciably* affect [the taxpayer's] beneficial interest except to reduce his tax.' " *ASA Investerings*, 201 F.3d at 514 (quoting *Knetsch v. United States*, 364 U.S. 361, 366, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960) (emphasis added) (quoting *Gilbert v. Commissioner*, 248 F.2d 399, 411 (2d Cir. 1957) (Hand, C.J., dissenting))). In two separate revenue rulings the IRS specifically has held that an American taxpayer cannot avoid U.S. taxes merely by relying on a treaty with a foreign country. *See* Rev. Rul. 84–153, 1984–2 C.B. 383, 1984 WL 262570; Rev. Rul. 84–152, 1984–2 C.B. 381, 1984 WL 262317. In other words, if the sole purpose of a transaction with a foreign corporation is to dodge U.S. taxes, the treaty cannot shield the taxpayer from the fatality of the step-transaction doctrine. For the taxpayer to enjoy the treaty's tax benefits, the transaction must have a sufficient business or economic purpose. We accord these rulings *Skidmore* defer-

ence—that is, they are " 'entitled to respect' " to the extent they "have the 'power to persuade,' " *Christensen v. Harris County*, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944))—and we find them persuasive given the plain meaning of 26 U.S.C. § 881 and § 1442, as informed by *Gregory v. Helvering*, 293 U.S. 465, 469, 55 S.Ct. 266, 79 L.Ed. 596 (1935).

■ From July 1992 through 1993, appellant made its loan payments directly to Delcom Financial. This fact is uncontested. Although Del BV may have recorded interest payments in its ledgers and reported them on its Dutch tax returns, there is no evidence that appellant paid anything to Del BV during this period. The U.S.-Netherlands Tax Treaty does not apply to direct transactions between a U.S. corporation and a Canadian corporation. Accordingly, appellant unquestionably should have withheld taxes on its payments to Delcom Financial beginning in July 1992. The Tax Court plainly did not err in coming to this conclusion.

■ Likewise, the Tax Court did not clearly err in concluding that the payments from appellant to Del BV were in substance payments made to Delcom Financial and that those payments only served to avoid U.S. taxes. The Tax Court's decision in *Gaw v. Commissioner* is instructive. T.C.M.1995–531, Nos. 17906–92, 18268–92, 1995 WL 664592 (Nov. 9, 1995), *aff'd*, 111 F.3d 962 (D.C.Cir.1997) (unpublished table disposition). *Gaw* dealt with a U.S. corporation's interest payments to a Dutch corporation that was a subsidiary of a Hong Kong corporation. The Tax Court held that the payments were subject to U.S. taxes because in substance they were directed to the Hong Kong corporation. The Tax Court explained that "[u]nder the substance over form doctrine, although the

form of a transaction may literally comply with the provisions of the [Internal Revenue] Code, that form will not be given effect where it has no business purpose and operates simply as a device to conceal the true character of that transaction." *Id.*, slip op. at 96. The court reasoned that the taxpayer had not carried his burden of proving that the loans had been structured for any nontax business reason. *See id.* at 114. Consequently, the court treated the loan as if it had been made by the Hong Kong corporation and ruled that the loan was subject to the withholding tax. *See id.* at 141–43.

Similarly, in this case, several facts demonstrate the nexus between the original Royal Bank loan and the loan from Del BV to appellant: (1) the interest rates and repayment schedules of the two loans closely correspond; (2) Royal Bank obtained a guaranty of repayment from appellant and a security interest in appellant's real property; and (3) beginning in the third quarter of 1992, appellant made payments on the loan directly to Delcom Financial at Royal Bank's request. Like the taxpayer in *Gaw*, appellant has failed to carry its burden of proving that Del BV was in substance the real lender for tax purposes. If appellant had received the loan from Royal Bank or Delcom Financial directly, the interest payments would have been taxable under the U.S. Canada Tax Treaty. Appellant has not shown that Del BV served any role with a "sufficient business or economic purpose to overcome the conduit nature of the transaction." Rev. Rul. 84–153, 1984–2 C.B. at 384.

Appellant contends that the series of transactions between Delcom Financial, Delcom Holdings, Delcom Cayman, Delcom Antilles, Del BV, and appellant was not designed solely to avoid U.S. taxes. Instead, according to appellant, by structuring the transactions as it did, Delcom

Financial achieved sizable Canadian tax savings. Appellant claims that Delcom Financial was able to take advantage of a Canadian tax code provision that allows corporations to deduct interest payments. In other words, Delcom Financial was able to deduct the value of the interest payments it made to Royal Bank as part of the original loan. This deduction was particularly valuable to Delcom Financial (and thus the Affiliated Group) because it received no additional income from which to offset the deduction. In addition, appellant asserts that under Canadian law and a treaty between Canada and the Netherlands, no corporations in the Affiliated Group were required to pay taxes "on amounts that were remitted by Del BV up the chain and ultimately received by [Delcom Financial] as dividends." Brief for Appellant at 7. Ultimately, appellant maintains that the Affiliated Group received substantial Canadian tax benefits relative to the U.S. taxes it avoided.

In Tax Court proceedings, the petitioner maintains the burden of proof. *See* Tax Ct. R. 142(a). In this case, appellant absolutely failed to carry its burden; it did not offer any evidence that the Affiliated Group achieved Canadian tax savings. Indeed, appellant did not submit Delcom Financial's Canadian tax returns. Nor did appellant submit any of Delcom Financial's corporate records. Without this evidence, the Tax Court could not have found that Delcom Financial reported or deducted the interest payments and dividends, or otherwise received any Canadian tax benefits.

In addition, appellant did not ask the Tax Court (or this Court) to take judicial notice of the relevant provisions of the Canadian tax code or the Canada–Netherlands tax treaty through which the Affiliated Group claims to have achieved tax savings—it did not even cite the provisions on which it claims to have relied. Given the

state of the record, we cannot possibly conclude that appellant carried its burden before the Tax Court or that the Tax Court clearly erred in finding that the transactions served any purpose other than avoiding U.S. taxes.

The only evidence presented to the Tax Court concerning the transactions' supposed Canadian tax benefits is the testimony of William Christie, vice president of corporate planning and taxation at Tridel Corporation (a corporation in the Affiliated Group that provided management and executive services to the related corporations). Christie testified that "I was told" that the "objectives" of the transaction were to secure financing for appellant and "to maximize [the Affiliated Group's] Canadian tax benefits." He also testified that his boss "said that he wanted to finance the [appellant's] operations and to do it in a very tax efficient manner for Canada."

Christie's testimony concerning the objectives of the transactions is hearsay. *See* FED.R.EVID. 801, 802; *see also* 26 U.S.C. § 7453 (providing that Tax Court proceedings shall be conducted "in accordance with the rules of evidence applicable in trials without a jury in the United States District Court of the District of Columbia"). As a result, the Tax Court could not—and apparently did not—rely upon it for the truth of the matter asserted.

Likewise, the only evidence appellant offers to establish that the Affiliated Group actually achieved Canadian tax benefits from the transactions is conclusory testimony by Christie. This testimony is inadequate to carry appellant's burden of proof and certainly does not establish that the Tax Court clearly erred.

Appellant contends that the IRS has held that foreign tax avoidance in general is a legitimate business purpose. *See* Rev. Rul. 89–101, 1989–2 C.B. 67, 1989 WL 550747. Revenue Ruling 89–101, on which appellant relies, focused on a transaction in which "a first-tier foreign subsidiary corporation distributes the stock of a second-tier foreign subsidiary corporation to the domestic parent corporation to reduce the amount of foreign withholding tax imposed on distributions by the second-tier corporation." *Id.* at 67. The IRS held that the transaction served a corporate business purpose within the meaning of Treasury Regulation § 1.355–2(b) "because it will benefit the affiliated group of corporations by reducing substantially the amount of foreign withholding tax imposed on distributions from a member of the group." *Id.* at 68.

The Commissioner does not concede that foreign tax avoidance is a legitimate business purpose, and we do not need to address that question here. While perhaps not directly applicable to this case, Treasury Regulation § 1.355–2(b) is instructive. That regulation, which formed the basis for Revenue Ruling 89–101, provides that "reducing non Federal taxes is not a corporate business purpose" if (1) the property distribution reduces "both Federal and non Federal taxes because of similarities between Federal tax law and the tax law of the other jurisdiction" and (2) "the reduction of Federal taxes is greater than or substantially coextensive with the reduction of non Federal taxes." Treas. Reg. § 1.355–2(b)(2). Based on this regulation and the revenue ruling on which appellant relies, even if foreign tax avoidance is a sufficient business purpose, appellant failed to establish that the Affiliated Group (or any of its members) achieved foreign tax savings greater than its U.S. tax savings—or that it achieved any foreign tax savings for that matter.

Finally, appellant suggests that we should follow the Seventh Circuit's deci-

sion in *Northern Indiana Public Service Co. v. Commissioner* ("*NIPSCO*"), 115 F.3d 506 (7th Cir.1997), which dealt with the tax treatment of an American corporation's interest payments to a Dutch corporation. We need not comment on whether we agree with *NIPSCO*'s legal analysis or holding; its procedural posture demonstrates why it does not help appellant's cause.

In *NIPSCO*, the taxpayer won in the Tax Court, and the Commissioner appealed. The Seventh Circuit affirmed the Tax Court's judgment, holding that the lower court did not clearly err in finding that the transactions had a legitimate business purpose other than U.S. tax avoidance. *See id.* at 514. The appellate court explained that the Dutch corporation participated in the transactions because it could obtain funds on the Eurobond market when "prevailing market conditions made the overall cost of borrowing abroad less than the cost of borrowing domestically." *Id.* at 511. Additionally, the Dutch corporation received a profit from its transactions with the U.S. taxpayer. This profit then was reinvested in the Eurobond market. The "profit motive" of the Dutch corporation was sufficient to show that the motive of the transaction was not simply tax avoidance.

Not only are the two cases not factually similar, but the taxpayer's evidence in *NIPSCO* was substantially stronger than the appellant's evidence in this case. Consequently, the *NIPSCO* taxpayer was able to carry its burden of proof in the Tax Court, and on appeal the Commissioner was unable to show that the Tax Court clearly erred. Even more significantly, in the case now before us, the roles of the parties are reversed. The taxpayer lost in the Tax Court, and it has appealed. Accordingly, it is the taxpayer who must establish that the Tax Court's findings

were clearly erroneous, which, as we explained above, it cannot do.

### B. Additions for Failing to Withhold U.S. Taxes

Section 6651(a)(1) of the Internal Revenue Code imposes a penalty for a person's failure to file a tax return unless the failure is due to "reasonable cause and not due to willful neglect." 26 U.S.C. § 6651(a)(1). Likewise, § 6656(a) imposes a penalty on a person who fails to deposit withholding taxes unless his failure is due to "reasonable cause and not due to willful neglect." *Id.* § 6656(a).

In *United States v. Boyle,* the Supreme Court discussed the meaning of "reasonable cause" and "willful neglect" in § 6651(a)(1). 469 U.S. 241, 245–46, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985). The *Boyle* Court explained that to demonstrate "reasonable cause" a taxpayer must establish "that he exercised ordinary business care and prudence but nevertheless was unable to file the return within the prescribed time." *Id.* at 246, 105 S.Ct. 687 (internal quotation omitted). "Willful neglect," on the other hand, is demonstrated by the taxpayer's "conscious, intentional failure or reckless indifference." *Id.* at 245, 105 S.Ct. 687. As the Court explained, the taxpayer maintains the "heavy burden" of proving that his failure to file a tax return was due to reasonable cause, not willful neglect. *Id.* The Commissioner suggests that the *Boyle* standard extends to § 6656(a).

Despite the Supreme Court's clear statements in *Boyle*, appellant contends that the proper standard for determining whether it should pay an addition is found in *Spies v. United States,* 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943), a case in which the taxpayer faced criminal penalties. In *Spies,* the Supreme Court reasoned: "It is not the purpose of the law to

penalize frank difference of opinion of innocent errors made despite the exercise of reasonable care. Such errors are corrected by the assessment of the deficiency of tax and its collection with interest for the delay." *Id.* at 496, 63 S.Ct. 364. We echoed this same sentiment many years ago. *See, e.g., Commissioner v. Clarion Oil Co.*, 148 F.2d 671, 677–78 (D.C.Cir. 1945); *see also Palm Beach Trust Co. v. Commissioner*, 174 F.2d 527, 527 & n. 2 (D.C.Cir.1949) (per curiam); *Orient Inv. & Fin. Co. v. Commissioner*, 166 F.2d 601, 604 (D.C.Cir.1948).

Unfortunately, appellant and the Commissioner do not attempt to reconcile or distinguish *Boyle* and *Spies*. Worse, neither party addresses the other's claim concerning the appropriate standard. Indeed, in their briefs, appellant does not even cite *Boyle*, and the Commissioner does not cite *Spies*.

Although the *Boyle* Court did not address the meaning of the terms "reasonable cause" and "willful neglect" as used in § 6656(a), the same terms used in the same statute for the same purpose presumably have the same meaning. *See Allen v. CSX Transp., Inc.*, 22 F.3d 1180, 1182 (D.C.Cir.1994). Because the same terms are used § 6651(a)(1) and § 6656(a) to define the circumstances in which a taxpayer is not required to pay additions, we see no reason why "reasonable cause" and "willful neglect" should not be interpreted consistently.

Notably, the *Boyle* Court did not overrule (or even cite) *Spies*. The *Spies* language cited by appellant, which is dicta, is not necessarily inconsistent with *Boyle*. After noting that the purpose of the tax code is not to "penalize frank difference of opinion," the *Spies* Court pointed out that "[i]f any part of the deficiency is due to negligence or intentional disregard of rules and regulations," the taxpayer is subject to additions. *See* 317 U.S. at 496–97, 63 S.Ct. 364. The Court's opinion in *Boyle* can be read as simply setting forth when a "deficiency is due to negligence or intentional disregard" rather than reasonable cause.

We need not fully contemplate the effect *Boyle* had on *Spies* to determine the outcome of this case; we therefore leave that question for another day. Appellant has not established that its failure to file tax returns or deposit withholding taxes was due to reasonable cause and not willful neglect as defined in *Boyle*. Although appellant purports in its appellate briefs that the transactions were founded on the U.S.-Netherlands Tax Treaty, it has not established that its deficiencies were not "due to negligence or intentional disregard of rules and regulations" as contemplated by *Spies*. Indeed, as we explained above, appellant failed to prove that it had any purpose other than avoiding U.S. taxes. *See supra* at 213–16. Because appellant bears the heavy burden of proving that its deficiencies were due to reasonable cause and not willful neglect, we have no basis for concluding that the Tax Court erred in upholding the additions imposed by the IRS.

### III.  CONCLUSION

For the foregoing reasons, the Tax Court's decision is AFFIRMED.