# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 13, 2018      Decided December 7, 2018

No. 17-5238

STARR INTERNATIONAL COMPANY, INC.,
APPELLANT

v.

UNITED STATES OF AMERICA, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:14-cv-01593)

---

*Rajiv Madan* argued the cause for appellant. With him on the briefs were *Christopher P. Bowers*, *Nathan P. Wacker*, and *Caroline Van Zile*.

*Richard Caldarone*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Travis A. Greaves*, Deputy Assistant Attorney General, and *Gilbert S. Rothenberg* and *Richard Farber*, Attorneys. *Judith A. Hagley*, Attorney, entered an appearance.

Before: HENDERSON and MILLETT, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: Dividends paid by U.S. corporations and received by foreign shareholders are generally subject to a 30 percent withholding tax. *See* 26 U.S.C. §§ 881(a)(1), 1442(a). Bilateral tax treaties between the United States and other nations reduce this tax rate to encourage cross-border investments and allow taxpayers to avoid double taxation. This case concerns an attempt by Swiss-domiciled Starr International Company, Inc. ("Starr") to avail itself of a bilateral tax treaty between the United States and Switzerland to reduce its tax rate on U.S.-source dividend income. *See generally* Convention Between the United States of America and the Swiss Confederation for the Avoidance of Double Taxation with Respect to Taxes on Income, Switz.-U.S., Oct. 2, 1996, S. Treaty Doc. No. 105-8 (1997) ("U.S.-Swiss Treaty" or "Treaty").

Starr is a privately held parent company to various international insurance and financial businesses. After establishing residence in Switzerland in 2006, Starr sought to pay a reduced tax rate under the U.S.-Swiss Treaty. Because Starr did not automatically qualify for treaty benefits, it relied on Article 22(6) of the Treaty, a provision that allows for discretionary tax relief. Article 22(6) states:

> A person that is not [otherwise] entitled to the benefits of this Convention . . . may, nevertheless, be granted the benefits of the Convention if the competent authority of the State in which the income arises so determines after consultation with the competent authority of the other Contracting State.

U.S.-Swiss Treaty art. 22(6). A Swiss taxpayer will be denied relief under Article 22(6) if the U.S. Competent Authority determines that obtaining benefits under the Treaty was one of the taxpayer's "principal purposes" in establishing itself in Switzerland. Dep't of the Treasury, Technical Explanation of the Convention Between the United States of America and the Swiss Confederation for the Avoidance of Double Taxation with Respect to Taxes on Income ("Technical Explanation") 72.

Starr sought discretionary relief from the U.S. Competent Authority – the Internal Revenue Service ("IRS") Deputy Commissioner for the Large Business and International Division – for the 2007 tax year. The IRS denied Starr's request after concluding that obtaining treaty benefits was a principal purpose of Starr's move to Switzerland. Objecting to this determination, Starr filed a claim for a refund of approximately $38 million in taxes improperly withheld. Starr then brought suit for a tax refund in the District Court, alleging that the IRS erred in denying Starr benefits under the U.S.-Swiss Treaty.

The District Court dismissed Starr's tax refund claim on the ground that it raised a nonjusticiable political question. *See Starr Int'l Co., Inc. v. United States* ("*Starr II*"), No. 14-cv-01593 (CRC), 2016 WL 410989, at *2 (D.D.C. Feb. 2, 2016). Starr then amended its complaint to bring a claim under the Administrative Procedure Act ("APA"), challenging the IRS's denial of treaty benefits as arbitrary and capricious. The District Court granted the Government's motion for summary judgment on Starr's APA claim. *Starr Int'l Co., Inc. v. United States* ("*Starr III*"), 275 F. Supp. 3d 228, 251 (D.D.C. 2017). It held that the IRS had reasonably interpreted and applied the U.S.-Swiss Treaty in denying Starr's request. *Id.*

Starr now appeals both decisions of the District Court. It claims the IRS misinterpreted and misapplied Article 22(6) and the Technical Explanation's "principal purpose" test. Starr therefore asks this court to issue a judgment granting the requested tax refund, which it maintains does not raise a political question.

For the reasons stated below, we reverse the decision of the District Court dismissing Starr's tax refund claim as raising a nonjusticiable political question and remand for further proceedings. Because we hold that Starr can proceed with its tax refund claim, we also hold that Starr does not have a cause of action under the APA. We therefore vacate the District Court's decision granting summary judgment against Starr on its APA claim, and remand with instructions to dismiss that claim.

## I. BACKGROUND

### A. The U.S.-Swiss Treaty

Section 881(a) of the Internal Revenue Code imposes a 30 percent tax on the U.S.-source income, such as dividend income, of foreign corporations. 26 U.S.C. § 881(a)(1). To collect this tax, the IRS requires U.S. corporations issuing dividends to withhold the tax from the foreign taxpayers and remit it directly to the IRS. *See* 26 U.S.C. § 1442(a). Dividend income may be subject to a lower tax rate if the taxpayer is a resident of a country with which the United States has an income tax treaty. As relevant here, the U.S.-Swiss Treaty reduces the tax on U.S.-source dividend income for Swiss residents from 30 percent to either 5 or 15 percent, depending

on the Swiss entity's percentage of ownership in the U.S. corporation. *See* U.S.-Swiss Treaty art. 10.

By reducing tax rates, bilateral tax agreements like the U.S.-Swiss Treaty serve several purposes, including removing impediments to trade and cross-border investment. *See* Tax Convention with Switzerland, S. Exec. Rep. No. 105-10, at 1 (1997). They mitigate double taxation of income earned by residents of one country from sources within the other country, in addition to preventing tax evasion by facilitating information sharing between the tax authorities of the treaty countries. *See id.* at 1–2. Treaty "Limitation on Benefits" provisions establish the criteria taxpayers must meet in order to obtain benefits. These provisions are designed to filter out "treaty shoppers," or residents of third states who use legal entities established in a contracting state in order to obtain the benefits of a tax treaty. Technical Explanation 59.

Article 22 is the "Limitation on Benefits" section of the U.S.-Swiss Treaty. It begins with a series of objective, mechanical tests designed to identify those treaty-country residents who merit benefits because of legitimate, non-tax motives for their claimed state of residency. *See* U.S.-Swiss Treaty art. 22(1)–(3); *see also* Technical Explanation 59. For example, individuals residing in Switzerland, certain Swiss family foundations, and companies engaged in business in Switzerland that meet specified criteria are automatically eligible for benefits. U.S.-Swiss Treaty art. 22(1)(a), (c), (g). The "assumption" underlying these tests is that a taxpayer who satisfies them "probably has a real business purpose for the structure it has adopted, or has a sufficiently strong nexus to the other Contracting State" to warrant benefits, and such "business purpose or connection outweighs any purpose to obtain the benefits of the Convention." Technical Explanation 59.

The Treaty drafters recognized that certain entities with legitimate reasons for residing in a contracting state might fail the rigid mechanical tests of Article 22, which "cannot account for every case in which the taxpayer was not treaty shopping." Technical Explanation 60. Accordingly, paragraph 6 of Article 22 leaves open the possibility of discretionary relief for persons who are not otherwise entitled to benefits "if the competent authority of the State in which the income arises so determines after consultation with the competent authority of the other Contracting State." U.S.-Swiss Treaty art. 22(6).

Paragraph 6, like the mechanical tests, aims "to identify investors whose residence in the other State can be explained by factors other than a purpose to derive treaty benefits." Technical Explanation 60. Therefore, in deciding whether a taxpayer qualifies for relief under Article 22(6), the competent authority of the treaty country in which the taxpayer's income arises

> will base a determination under this paragraph on whether the establishment, acquisition, or maintenance of the person seeking benefits under the Convention, or the conduct of such person's operations, has or had as one of its principal purposes the obtaining of benefits under the Convention. Thus, persons that establish operations in one of the States with a principal purpose of obtaining the benefits of the Convention ordinarily will not be granted relief under paragraph 6.

*Id.* at 72. This "principal purpose" test provides the standard for evaluating whether a taxpayer is entitled to relief under Article 22(6).

## B. Factual and Procedural Background

Starr, a parent company to a number of international financial and insurance businesses, was once the largest shareholder of American International Group, Inc. ("AIG"). Starr continued to hold significant investments in AIG common stock, its principal asset, at all times relevant to this case. In 2004, Starr relocated to Ireland from Bermuda, where it had long resided. In Ireland, Starr paid a reduced rate of withholding tax on dividends under a bilateral income tax treaty between the United States and Ireland. In 2006, Starr established itself in Switzerland and subsequently sought to reduce its dividend tax rate by obtaining benefits under the U.S.-Swiss Treaty. Because Starr did not automatically qualify for benefits under the mechanical tests of Article 22, it requested discretionary relief under paragraph 6.

After a prolonged review process from 2007 to 2010, the U.S. Competent Authority issued a final determination letter denying Starr's request. The Competent Authority found it "impossible . . . to conclude that obtaining treaty benefits was not at least one of the principal purposes for moving [Starr's] management, and therefore its residency, to Switzerland." Joint Appendix ("J.A.") 256. The letter pointed to "facts and circumstances regarding [Starr's] original structure and subsequent restructurings" that the Competent Authority found "troubling," including Starr's (1) legal organization and initial incorporation in Panama, (2) relocation to Ireland and enjoyment of tax treaty benefits shortly before the payment of AIG dividends, (3) brief residence in Ireland before moving to Switzerland, and (4) control by predominately U.S. individuals. J.A. 255–56.

Starr filed a claim for a tax refund with the IRS for the 2007 tax year, seeking approximately $38 million based on the

Treaty's reduced tax rates. When the IRS took no action on Starr's refund claim, Starr brought a tax refund suit in the District Court under § 7422(a) of the Internal Revenue Code to recover the taxes it alleges were wrongly withheld. Complaint ¶¶ 3, 53–56, J.A. 312, 322; *see also* 26 U.S.C. § 7422(a) (providing a cause of action for a "suit or proceeding . . . for the recovery of [an] internal revenue tax alleged to have been erroneously or illegally assessed or collected"). Starr asserts that the Government erred in denying benefits under the U.S.-Swiss Treaty because it was not treaty shopping when it relocated to Switzerland, and because the U.S. Competent Authority failed to consult with its Swiss counterpart before denying Starr's request. Complaint ¶¶ 49–50, J.A. 320–21.

The District Court initially granted the Government's motion to dismiss Starr's claim that the Government violated the Treaty by failing to consult with the Swiss Competent Authority, but allowed Starr's tax refund claim to proceed. *Starr Int'l Co., Inc. v. United States* ("*Starr I*"), 139 F. Supp. 3d 214, 231 (D.D.C. 2015), *vacated*, *Starr II*, 2016 WL 410989. The court found that the U.S.-Swiss Treaty and guidance from the Technical Explanation, including the "principal purpose" test, provide a judicially-manageable standard for review of whether Starr is entitled to relief under Article 22(6). *Id.* at 229. It granted Starr's motion to strike the Government's justiciability defenses, finding that the Government's decision was not committed to agency discretion by law, *id.* at 228, and that interpreting the terms of the Treaty would not implicate the political question doctrine, *id.* at 231.

The District Court subsequently vacated its decision in *Starr I* after the Government moved for reconsideration. *Starr II*, 2016 WL 410989, at *6. The court reaffirmed its prior holding that a manageable standard exists for assessing

whether Starr met the relevant criteria for obtaining treaty benefits. *Id.* at \*1. It also reiterated that interpreting the Treaty "in a manner necessary to determine whether Starr met the applicable criteria would not offend the political-question doctrine." *Id.* However, the court dismissed Starr's tax refund claim under 26 U.S.C. § 7422(a) as raising a nonjusticiable political question. *Id.* at \*2. As the District Court saw it, ordering the IRS to pay Starr the requested $38 million refund would impinge upon the Executive Branch's exercise of diplomacy in its consultation with the Swiss competent authority, as required under Article 22(6). *Id.* As consultation had not yet occurred, the court believed that, if it were to find that Starr was entitled to treaty benefits, ordering the IRS to issue Starr a specific monetary refund would "render consultation meaningless or dictate its outcome." *Id.* Because the District Court assumed it could not redress Starr's harm without answering a political question, it held that Starr lacked standing to pursue its tax refund claim. *Id.* at \*4. The court thus allowed Starr to amend its complaint to bring a claim under the APA. *Id.* at \*6.

Starr then challenged the Government's denial of treaty benefits as "arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law." First Amended Complaint ¶ 3, J.A. 347; *see also* 5 U.S.C. § 706(2)(A). In a lengthy opinion, the District Court granted the Government's motion for summary judgment and denied Starr's cross-motion. *Starr III*, 275 F. Supp. 3d at 251. The court held that the Government reasonably interpreted and applied the U.S.-Swiss Treaty and the Technical Explanation in denying Starr a tax refund. *See id.*

Starr appeals both the decision in *Starr II* granting the Government's motion to dismiss the tax refund claim as a nonjusticiable political question, as well as the decision in

*Starr III* granting the Government's motion for summary judgment and denying Starr's cross-motion on the APA claim.

## II.  ANALYSIS

### A.  Standard of Review

We review *de novo* whether this case presents a nonjusticiable political question. *See Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 314 (D.C. Cir. 2014). In light of our decision, as explained below, that Starr does not have a cause of action under the APA, *see* 5 U.S.C. § 704, we decline to review the District Court's decision on Starr's APA claim.

### B.  The Political Question Doctrine Has No Application in this Case

The District Court dismissed Starr's tax refund claim under 26 U.S.C. § 7422(a) as raising a nonjusticiable political question. We hold that the District Court erred regarding the applicability of the political question doctrine.

The Supreme Court laid out its oft-cited formulation of the political question doctrine in *Baker v. Carr*:

> Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the

respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

369 U.S. 186, 217 (1962). Under *Baker v. Carr* and its progeny, a court may not dismiss a claim as nonjusticiable "[u]nless one of these formulations is inextricable from the case at bar." *bin Ali Jaber v. United States*, 861 F.3d 241, 245 (D.C. Cir. 2017) (quoting *Baker v. Carr*, 369 U.S. at 217).

Furthermore, the Supreme Court has made it clear that application of the political question doctrine is a limited and narrow exception to federal court jurisdiction. For example, in *United States v. Munoz-Flores*, 495 U.S. 385 (1990), the Supreme Court considered whether a special assessment statute was a revenue raising bill within the meaning of the Origination Clause. *Id.* at 387. In rejecting the Government's argument that the case presented a nonjusticiable political question, the Court aptly noted:

> Surely a judicial system capable of determining when punishment is "cruel and unusual," when bail is "[e]xcessive," when searches are "unreasonable," and when congressional action is "necessary and proper" for executing an enumerated power is capable of making the more prosaic judgments demanded by adjudication of Origination Clause challenges.

*Id.* at 396.

Thus, "it is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance," *Baker v. Carr*, 369 U.S. at 211, and it is axiomatic

that "courts have the authority to construe treaties," *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986). A court cannot "avoid [its] responsibility" to enforce a specific statutory right "merely 'because the issues have political implications.'" *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189, 196 (2012) (quoting *INS v. Chadha*, 462 U.S. 919, 943 (1983)).

None of the *Baker v. Carr* factors are present in Starr's tax refund claim. Starr's eligibility for discretionary relief under Article 22(6) presents a straightforward case of treaty interpretation. And Article 22(6) and the Technical Explanation provide meaningful standards that enable a court to determine whether the IRS's determination was erroneous. Therefore, Starr's claim that the IRS misinterpreted federal law in denying the company a refund is plainly a matter for a court to decide.

The Supreme Court's decisions in *Japan Whaling* and *Zivotofsky* are particularly instructive. In *Japan Whaling*, the Court rejected the argument that the political question doctrine barred judicial resolution of an action to repudiate an executive agreement between the United States and Japan and to require the U.S. Secretary of Commerce to certify Japan as violating an international convention. *Japan Whaling*, 478 U.S. at 229–30. The challenge to the Secretary's decision not to certify Japan for harvesting whales in excess of international quotas "present[ed] a purely legal question of statutory interpretation." *Id.* at 230. The Court had to "determine the nature and scope of the duty imposed upon the Secretary by the [statute], a decision which call[ed] for applying no more than the traditional rules of statutory construction, and then applying this analysis to the particular set of facts presented." *Id.* Cognizant of the decision's potential implications for foreign relations and the "premier role which both Congress and the Executive play in

[that] field," the Court nonetheless concluded that "under the Constitution, one of the Judiciary's characteristic roles is to interpret statutes, and we cannot shirk this responsibility merely because our decision may have significant political overtones." *Id.*

The decision in *Zivotofsky* is the Supreme Court's most recent reminder that the judiciary must resolve disputes over specific statutory rights when properly called upon to do so. *Zivotofsky* concerned a statute that directed the Secretary of State, upon request, to issue to a U.S. citizen born in Jerusalem a birth certificate or passport identifying Israel as the place of birth. 566 U.S. at 191–92. Diplomatic officials later refused a request to list "Jerusalem, Israel," as an individual's place of birth out of concern that the statute would impermissibly interfere with the Executive's foreign relations powers. *Id.* at 192–93. The Court held that the question of the statute's constitutionality was justiciable. *Id.* at 194, 201. The Court was not being asked to determine whether Jerusalem is the capital of Israel but instead to decide whether an individual had a statutory right to have Israel designated as his place of birth on his passport. *Id.* at 195. "[*Zivotofsky*] recognizes that, in foreign policy cases, courts must first ascertain if '[t]he federal courts are . . . being asked to supplant a foreign policy decision of the political branches with the courts' own unmoored determination' or, instead, merely tasked with, for instance, the 'familiar judicial exercise' of determining how a statute should be interpreted or whether it is constitutional." *bin Ali Jaber*, 861 F.3d at 248 (quoting *Zivotofsky*, 566 U.S. at 196).

Starr's tax refund claim is squarely an example of the latter case. Starr's claim requires a court to "determine the nature and scope of the duty imposed" on the U.S. Competent Authority under Article 22(6), "a decision which calls for applying no more than the traditional rules of statutory construction" with

respect to the U.S.-Swiss Treaty, "and then applying this analysis to the particular set of facts" of Starr's case. *Japan Whaling*, 478 U.S. at 230; *see also Hourani v. Mirtchev*, 796 F.3d 1, 8 (D.C. Cir. 2015) (declining to find a case nonjusticiable under the political question doctrine where "the standards needed to resolve" the claims at issue were "the workaday tools for decision-making that courts routinely employ," even though the court's judgment "might implicate the actions of a foreign government"). And it is hardly an oddity for courts to adjudicate tax claims based on international tax agreements, which is all that is required here. *See, e.g.*, *Eshel v. Comm'r*, 831 F.3d 512 (D.C. Cir. 2016); *Nat'l Westminster Bank, PLC v. United States*, 512 F.3d 1347 (Fed. Cir. 2008); *Del Commercial Props., Inc. v. Comm'r*, 251 F.3d 210 (D.C. Cir. 2001); *Xerox Corp. v. United States*, 41 F.3d 647 (Fed. Cir. 1994).

The District Court held that Starr's refund action was nonjusticiable because granting a refund would "impinge upon the Executive's prerogative to engage in [the consultation] process" with Switzerland. *Starr II*, 2016 WL 410989, at *2. Explaining that it could not "dictate the contents of any diplomatic communications in which the executive branch engages," the court assumed that a decision about Starr's eligibility for relief under Article 22(6) would impermissibly "establish the outcome of any negotiation or consultation between an executive-branch official and representatives of a foreign country." *Id.* at *4. The court focused on its perceived "inability and lack of competence" to "step into the shoes of the IRS and its Swiss counterparts and effectively preordain the outcome of any consultation between the two." *Id.* at **3–4. This understanding of Starr's tax refund claim and the political question doctrine was incorrect.

A District Court decision will have no impact on the consultation between the U.S. and Swiss Competent Authorities. Starr asks for a judicial determination as to whether the Government erred in denying Starr treaty benefits. As explained below, if the District Court finds the IRS's position indefensible, it can stay the case pending consultation between the Competent Authorities, as consultation is required before a refund can be granted. *See* U.S.-Swiss Treaty art. 22(6). The IRS then can return to court and present any new evidence from consultation. Our holding does not grant Starr the right to review the consultation. Rather, consultation is merely one element of the IRS's deliberative process. The Government may use information that arises out of consultation as support for its ultimate decision, but Starr duly concedes that it has no right to challenge the consultation itself. And a foreign authority's views do not control any determination by the U.S. Competent Authority under Article 22(6). *See* Oral Argument at 39:14–39:35, 45:13–45:35, No. 17-5238 (D.C. Cir. argued Sept. 13, 2018).

Because the District Court concluded that it could not redress Starr's harm without deciding a political question, it found that Starr lacked standing. *Starr II*, 2016 WL 410989, at \*4. However, the question as to whether the IRS properly found Starr ineligible for treaty benefits under Article 22(6) does not raise a political question. Therefore, Starr's standing is not in dispute because a tax refund of the requested $38 million would plainly redress Starr's injury. We therefore reverse and remand the District Court's judgment so that Starr may proceed with its tax refund claim under 26 U.S.C. § 7422(a).

### C. Starr Does Not Have a Cause of Action Under the APA

Because the District Court assumed that Starr could not seek redress under 26 U.S.C. § 7422(a), it allowed Starr to challenge the Government's denial of treaty benefits under the APA, although it found no merit in that claim. We hold that the District Court was mistaken in assuming that Starr could pursue a cause of action under the APA.

The APA supports a cause of action only when "there is no other adequate remedy in a court." 5 U.S.C. § 704. Because 26 U.S.C. § 7422(a) is the appropriate vehicle for Starr's claim for relief, Starr does not have a cause of action under the APA. *See Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 620–21 (D.C. Cir. 2017) (explaining that the adequate remedy bar of § 704 determines whether there is a cause of action under the APA); *Cohen v. United States*, 650 F.3d 717, 731 (D.C. Cir. 2011) (en banc) (holding that APA review of a challenge to tax refund procedures would be available only if 26 U.S.C. § 7422(a) did not provide an adequate remedy).

### D. Starr's Tax Refund Claim was Properly Brought Under 26 U.S.C. § 7422(a)

Section 7422(a) of the Internal Revenue Code provides a cause of action for the "recovery" of a "tax alleged to have been erroneously or illegally assessed or collected," 26 U.S.C. § 7422(a), which is precisely the relief Starr seeks. Taxpayers are generally required to challenge the validity of a tax assessment in a refund proceeding, as opposed to suits seeking equitable or declaratory relief. *See, e.g.*, *Bob Jones Univ. v. Simon*, 416 U.S. 725, 746 (1974) (holding that suits for refunds offer taxpayers a full opportunity to litigate the legality of IRS

decisions); *Enochs v. Williams Packing & Nav. Co.*, 370 U.S. 1, 7 (1962) (interpreting the Anti-Injunction Act, 26 U.S.C. § 7421(a), to "require that the legal right to . . . disputed sums be determined in a suit for refund"); *Fla. Bankers Ass'n v. U.S. Dep't of Treasury*, 799 F.3d 1065, 1066 (D.C. Cir. 2015) (affirming that challenges to tax statutes and regulations are to be brought in refund suits after a tax has been paid or in deficiency proceedings).

The Government cites *Cohen*, 650 F.3d 717, in support of its claim that Starr's case should be decided under the APA. We disagree. In *Cohen*, we stated unequivocally that "taxpayer challenges to the validity of an individual tax" are "paradigmatic refund suits." 650 F.3d at 733. And we stressed the fundamental difference between those cases and "challenge[s] to an IRS regulation, action, or procedure unrelated to the individual assessment or collection of taxes." *Id. Cohen* involved a class-action challenge to a refund mechanism that the IRS had established after illegally collecting an excise tax on phone calls. *Id.* at 720–21. We allowed the APA action to proceed because, "[i]n the tax context, the only APA suits subject to review would be those cases pertaining to final agency action unrelated to tax assessment and collection." *Id.* at 733. The plaintiffs in *Cohen* sought prospective, non-monetary relief, so an APA action was appropriate.

Unlike in *Cohen*, Starr challenges the validity of an individual tax, not IRS procedures, and requests retroactive monetary relief. We therefore remand the case to the District Court to allow Starr to pursue its claim for a tax refund. One of four possible scenarios will likely play out, though the parties and the District Court may consider other ways to proceed:

1. The U.S. Competent Authority could decide to proceed with consultation and might subsequently determine that Starr is entitled to benefits under the U.S.-Swiss Treaty. If the IRS awards Starr the monetary amount it seeks, the case will presumably be moot.

2. The U.S. Competent Authority might consult with its Swiss counterpart and maintain its current position that Starr is not entitled to Treaty benefits. Engaging in consultation before further proceedings in the District Court could expedite resolution of this case and give the Government any additional information that might come from consultation. If the District Court finds that the IRS should have deemed Starr eligible for benefits under Article 22(6), then the court may award Starr the money it seeks, consultation having already occurred as required under the Treaty.

3. The IRS might choose to maintain its current position without engaging in consultation at this time. If the District Court finds the IRS's position indefensible, it can stay the case pending consultation between the U.S. and Swiss Competent Authorities, as no refund can be granted without consultation. The IRS can return to court and have the opportunity to present any new evidence that may have come to light during consultation. This posture would not afford Starr the right to seek review of the consultation, which is simply part of the IRS's deliberative process. But if the IRS returns to the District Court and cites information obtained during the consultation process as the reason for denying tax benefits, that decision would be reviewable.

4. If the refund action goes forward and the District Court finds the evidence supports the IRS's decision to deny benefits, then judgment may be granted in the Government's favor.

In the last three scenarios above, appellate review may be sought by an aggrieved party, as appropriate. In reviewing any IRS decision to deny Starr benefits under the U.S.-Swiss Treaty, the District Court will use established principles of treaty interpretation in evaluating the IRS's application of Article 22(6). "The interpretation of a treaty . . . begins with its text." *Medellin v. Texas*, 552 U.S. 491, 506 (2008). The "clear import" of a treaty's text "controls unless application of the words of the treaty according to their obvious meaning effects a result inconsistent with the intent or expectations of its signatories." *Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 180 (1982) (citation and internal quotation marks omitted). If a treaty's text leaves any ambiguity, a court should "consult[] sources illuminating the 'shared expectations of the contracting parties,' such as 'the negotiating and drafting history' and 'the postratification understanding of the contracting parties.'" *Eshel*, 831 F.3d at 519–20 (quoting *Zicherman v. Korean Air Lines Co.*, 516 U.S. 217, 223, 226 (1996)). "Although not conclusive, the meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight." *Sumitomo*, 457 U.S. at 184–85.

Finally, Starr urges this court to hold that the IRS misinterpreted and misapplied Article 22(6) and the principal purpose test of the Technical Explanation. We recognize that the District Court addressed these issues when it reviewed the IRS's determination in the context of Starr's APA claim. However, because we remand this case to the District Court to proceed as a tax refund claim, we leave it to the District Court in the first instance to consider Starr's arguments in the context of the tax refund action.

### III. Conclusion

For the foregoing reasons, we reverse the decision of the District Court dismissing Starr's tax refund claim and remand for further proceedings. We vacate the District Court's decision granting the Government's motion for summary judgment and denying Starr's cross-motion with respect to Starr's APA claim, and we remand with instructions to dismiss that claim.

*So ordered*.